Syllabus.

Staunton.

CLINCHFIELD COAL CORPORATION V. REDD.

September 19, 1918.

Absent, Burks, J.

1. MALICIOUS PROSECUTION — *Declaration — Appeal and Error.* — Where a declaration contained three counts, neither of which consisted of the single charge of false arrest and imprisonment. and the gravamen of each count rested upon a charge of malicious prosecution, and the case below was proceeded with by court and counsel as an action for malicious prosecution, the Supreme Court of Appeals will deal with the case as an action for malicious prosecution.

2. MALICIOUS PROSECUTION—*Elements to Sustain Action.*—In order to sustain an action for malicious prosecution, it must be alleged and proved that the prosecution was set on foot by the defendant, and that it has terminated in a manner not unfavorable to the plaintiff; that it was instituted or procured by the co-operation of the defendant; that it was without probable cause; and that it was malicious.

3. MALICIOUS PROSECUTION—*Termination of Prosecution in Favor of Plaintiff.*—The dismissal of a warrant without a trial at the instance of the defendant was a sufficient termination of the prosecution in favor of plaintiff to enable him to maintain an action for malicious prosecution.

4. MALICIOUS PROSECUTION—*Instigation of Prosecution by Defendant—Officers of the Law.*—There can be no malicious prosecution without the machinery of the law, and it is, therefore, of course true that the officers of the law must be the final and effective actors. The question in every case is, was the prosecution instigated or brought about by the co-operation of the defendant? Such instigation or co-operation may be chargeable to the defendant from original steps taken by him to. incite the prosecution, or from subsequent adoption and ratification by him of steps which had already been taken or instigated by others.

5. MALICIOUS PROSECUTION—*Instigation of Prosecution by Defendant—Officers of the Law.*—The instant case was submitted to the jury upon two theories—first, that the injury complained

of was done by the servant of the defendant in the course of his employment, and, second, that the defendant subsequently ratified and continued the prosecution, and there was sufficient evidence to support the verdict of the jury upon either or both of these theories.

6. APPEAL AND ERROR—*Objection not Raised Below.*—The record in the instant case did not disclose how the officer who arrested plaintiff derived his authority as an officer of the law, and plaintiff's counsel contended that there was no proof of his qualification as such, but the trial was proceeded with upon the apparent concession that he was an officer, the plaintiff in his own testimony referred to him as such, his official authority was not in any way challenged, and, under these circumstances, it was too late to raise the question for the first time on appeal.

7. MALICIOUS PROSECUTION—*Officers of the Law—Agent of Defendant.*—The fact that the party who arrested plaintiff was an officer, however, did not preclude him from acting also in the capacity of an agent of the defendant. The employment of special agents, who are clothed with police powers, is a common and well-known practice among mining, manufacturing and transportation companies.

8. INDEPENDENT CONTRACTOR—*Who is.*—An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.

9. MALICIOUS PROSECUTION—*Detective—Independent Contractor—Master and Servant.*—The person who arrested plaintiff was not on defendant company's payroll. The company paid a detective agency for his services and the agency paid him a salary. But it appeared from the evidence that he looked to the defendant for his instructions, was subject to its orders and directions, and that his principal business was to carry out the wishes and the purposes and policy of the defendant company in connection with the preservation of order and the enforcement of law at its plant, and in the instant case he did not procure or ask for a warrant until after a conference with defendant's superintendent.

Held: That the relationship of master and servant was established between defendant company and the person causing the arrest of plaintiff, and that the independent contractor doctrine did not apply.

10. MALICIOUS PROSECUTION — *Master and Servant — Independent Contractor—Non-assignable Duties.*—Selection of the servant, payment of wages, power of dismissal, and particularly the power of control, are circumstances to be considered, and are

usually decisive, in determining the relation of master and servant; but where the work to be done involves the exercise of personal and non-assignable legal duties, no individual or corporation can escape the doctrine of *respondeat superior* by transferring to third persons the selection and payment and the power of dismissal and control of the servant. The owner of an operation or enterprise cannot, by securing through others special agents, even though they be officers of the law, for the prosecution of offenders around the plant, obtain any immunity from liability for malicious prosecutions which such owner would not be equally entitled to if he himself directly selected and paid the agents and expressly retained the power of control and removal. When he undertakes these functions, his duties are personal and non-assignable, and where he arranges for and accepts the service, he will not be permitted to say that the relationship of master and servant does not exist.

11. MALICIOUS PROSECUTION—*Burden of Proof—Arrest by Officer who is also Agent of Defendant.*—The burden of proof, where a prosecution is instigated by an officer who is also an employee of defendant, is in every case upon the plaintiff to overcome the presumption that the officer was acting solely in his official capacity; but in the instant case there was evidence to justify the jury in finding for the plaintiff on that issue. Even if it be conceded that the prosecution originated in a purely official act on the part of the special agent, the jury might well have found the verdict upon the theory of the defendant's subsequent approval and ratification.

12. MALICIOUS PROSECUTION—*Ratification of Act of Agent.*—Whether the special officer in arresting plaintiff and making an assault upon him, was acting within the scope of his employment by the defendant, there can be no doubt that he intended what he did for the benefit of the defendant; and the subsequent continuance of the prosecution by the superintendent of defendant, with knowledge of what had gone before, brings the case clearly within the principle of ratification.

13. APPPEAL AND ERROR—*Affirmance—How Evidence Considered.*—After a verdict for plaintiff, the Supreme Court of Appeals must accept as true all of the facts favorable to the plaintiff which the evidence tended to establish.

14. MALICIOUS PROSECUTION—*Advice of Counsel.*—Advice of counsel, to avail as a defense, must have been sought and obtained before the prosecution is begun, must be based upon a full statement of the facts to counsel, and must be acted upon by the defendant.

15. MALICIOUS PROSECUTION—*Advice of Counsel—Purpose—Probable*

Cause.—The true purpose for which advice of counsel may be shown in defense of an action for malicious prosecution would seem to be to establish probable cause; and the test of probable cause is to be applied at the time the action complained of was taken.

16. MALICIOUS PROSECUTION—*Law Favors Prosecution for Crime— Probable Cause.*—The law favors prosecution for crime, but this principle and policy of the law does not go to the extent of inviting the prosecution of citizens who are keeping within their rights merely because some other citizen may have an impression that there is reason to institute a prosecution. The protection which the law extends to the prosecutor depends (1) upon the existence of "such ground as would induce a man of ordinary prudence and discretion to believe in the guilt and to expect the conviction of the person suspected," and (2) upon the prosecutor's *acting* "upon such belief and expectation."

17. MALICIOUS PROSECUTION—*Probable Cause—Mistaken Belief.*— There may be circumstances under which a mistaken belief in a legal proposition, like a mistaken belief in the existence of facts, would afford ground for a prosecutor to claim probable cause as a defense in an action for malicious persecution; but such belief must be positive and definite. A confessedly doubtful state of mind will not suffice, either as to the facts or the law.

18. MALICIOUS PROSECUTION—*Probable Cause.*—Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected.

19. MALICIOUS PROSECUTION—*Probable Cause—Case at Bar.*—In the instant case the evidence did not show that there was probable cause for the prosecution of plaintiff. The facts, which are not disputed, did not warrant it, and the general superintendent of the defendant, who, as the jury had the right to find, and did necessarily find, authorized or ratified the proceeding, did not claim to have any fixed opinion or belief as to the plaintiff's guilt.

20. MALICIOUS PROSECUTION—*Advice of Counsel.*—In order that legal advice may be used as a shield against a suit for malicious prosecution, it must be given by "a person accepted and licensed by the courts as one learned in the law and competent to be adviser to clients and to the court."

21. MALICIOUS PROSECUTION—*Advice of Counsel.*—In the instant case there was nothing at all in the record to indicate that either the special officer or the superintendent of defendant company deferred in any way to the advice and judgment of the justice who issued the warrant, and if they had done so, his advice would not have constituted a legal defense to the action.

22. LABOR AGENTS—*License.*—In *Watts* v. *Commonwealth,* 106 Va. 851, 56 S. E. 223, Ann. Cas. 1914 B, 738, it was held that the act (Appendix Virginia Code 1904, page 2247), prohibiting labor agents from conducting their business without obtaining a license, did not prohibit any person, or the agent of any person, who needed men for his own work, from hiring them without paying a license; and it would seem that the effect of the statute in that respect has not been changed by the amendment of 1916 (Acts 1916, page 880).

23. MALICIOUS PROSECUTION—*Probable Cause—Issuance of Warrant or Finding of Indictment.*—The issuance of a warrant or the finding of an indictment does not constitute conclusive proof of probable cause. Whether the issuance of the warrant constitutes *prima facie* evidence of probable cause, is an immaterial question, since the burden is always on the plaintiff to negative the existence of such cause, and the provisions of section 3955 of the Code of 1904, giving a certain discretion to magistrates in the issuance of warrants in criminal cases, do not add anything to the general law of evidence in suits for malicious prosecution.

24. MALICIOUS PROSECUTION—*Probable Cause—Question of Law or Fact.*—What is probable cause as an abstract legal proposition is a question for the court; but where there is any conflict of evidence it is for the jury to determine whether in the particular case such probable cause existed.

25. MALICIOUS PROSECUTION—*Malice—Questions of Law and Fact.*— Malice may be, and generally is, inferred from want of probable cause, though, it is said, it is not a necessary inference. It is always a question for the jury under all the circumstances of the case.

26. INSTRUCTIONS—*Read in Light of Facts.*—Instructions must always be read in the light of the facts of the particular case.

27. MALICIOUS PROSECUTION—*Instructions—Disavowal of Act of Agent.*—In an action for malicious prosecution the jury were instructed that if they believed from the evidence that the defendant company did not at first set on foot the arrest and prosecution of the plaintiff, yet if they believed that the defendant company, through its superintendent did not disavow the act at once, when it came to its knowledge, but ratified the act and continued the prosecution without probable cause, such continued arrest and prosecution is equivalent to precedent authority.

*Held:* Not improper under the facts of the case as demanding an immediate disavowal before the defendant had come into the possession of all the facts.

28. MALICIOUS PROSECUTION—*Malice—Want of Probable Cause.*— In an action for malicious prosecution malice may be implied

from the want of probable cause if the circumstances will warrant the implication, but the existence of malice may be repelled by the circumstances, though there was not good ground for the prosecution, and in such cases the action will not lie.

29. INSTRUCTIONS—*Instructions are to be Read Together—Malicious Prosecution.*—In an action for malicious prosecution, an instruction that malice may be inferred from want of probable cause, standing alone, might have constituted reversible error. But instructions are to be read as a whole, and the instruction in question itself told the jury in effect that the burden was on the plaintiff to establish by a preponderance of the evidence, not only the negative proposition that the prosecution was instituted without probable cause, but also that it was malicious; and another instruction precluded any probability of a misapprehension in this respect on the part of the jury.

30. MALICIOUS PROSECUTION—*Exemplary Damages—Case at Bar.*— In view of the evidence in the instant case an intsruction that the jury if they believe that the acts complained of were committed with actual malice and a design to injure or oppress the plaintiff, might assess punitive or exemplary damages, was not erroneous.

31. INSTRUCTIONS—*Repetition.*—Where the instructions in a case cover the law of the case adequately, there is no error in the rejection of other instructions, containing correct propositions of law applicable to the case, which were substantially embodied in the instructions given.

Error to a judgment of the Circuit Court of Russell county, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Burns & Kidd* and *Morison, Morison & Robertson,* for the plaintiff in error.

*Chapman, Peery & Buchanan* and *M. M. Long,* for the defendant in error.

54

KELLY, J., delivered the opinion of the court.

In this action for malicious prosecution S. M. Redd, herein referred to as the plaintiff, recovered against the Clinchfield Coal Corporation, herein referred to as the defendant, a verdict for $1,800, and the trial court, in accordance therewith, rendered the judgment under review.

The evidence was in some respects conflicting, but was sufficient to warrant the jury in finding the following material facts: The plaintiff, whose home was at Gate City, Virginia, was a member of the firm of Vaughan & Redd, contractors, engaged at the time of the alleged grievance, July, 1916, in constructing a highway in West Virginia. He came to Virginia for the purpose of employing laborers for his firm. After hiring some men at Honaker, a town not far from the defendant's coal mining plant at Dante, in Russell county, Va., he was told that the mines at the latter place had been shut down on account of a wash-out on the railroad and would not start up for two or three months, that many of the employees were leaving the plant, and that he could secure plenty of men there. A young man named Thompson, one of the laborers whom he had hired at Honaker, lived at Dante, and said he could go there and engage the men. Redd feared that this might be a violation of the statute prohibiting labor agents from soliciting laborers without a license, and, therefore declined to send him on the mission alone, but he took Thompson with him to furnish the names of some country boys living near Dante, who Thompson thought would like to get employment in West Virginia, and the two went to Dante, arriving there on the afternoon of July 24. The plaintiff, finding that the mines had not been shut down altogether, and finding further that there were no idle men around the place, and being told by Thompson that the boys he had in mind had gone away, decided to leave the next morning for West Virginia,

and instructed Thompson to meet him at the depot accordingly. While he was at the depot the next day, a man named Phillips, who seems to have been a labor agent for the defendant company, told him that he had a boy who was too light for mine work, and that it would be all right with the superintendent of the company for the plaintiff to take this boy if he would pay for his transportation and what the labor agent had spent on him. The plaintiff replied that he would take the boy if it was agreeable, and thereupon Phillips said he would go to see the superintendent and report the result of his interview. Phillips returned after the train started, but in time for him to get aboard. The plaintiff, his employee, young Thompson, the boy, whose name was King, the labor agent Phillips, and a special officer also named Thompson, all boarded the train. The boy, King, approached the plaintiff and said, "That man says it will be all right for me to go with you," and the plaintiff then paid the fare of both King and Thompson. Shortly afterwards the plaintiff saw the special officer talking to the two men whose fare he had paid, and thought they looked frightened. He approached them and asked about the trouble. The officer then charged him with being a labor agent, to which he replied, "I am no labor agent, but I have hired this man Thompson at Honaker, and understood it was all right for this other man to go with me. I do not want to take him unless it is all right for him to go with me." The officer then inquired if the plaintiff had paid the boy's transportation, and upon receiving an affirmative answer informed the plaintiff that he was under arrest, and displayed his official badge. The plaintiff then asked what the officer was going to do with him, and the latter replied that he was going to take him back to Dante and try him. The plaintiff said, "You had better be sure you know what you are doing about this thing," and thereupon the officer, who was much the larger of the two men, struck the plaintiff in the face and knocked him down.

It may be well at this point to state that this special officer was employed directly and primarily by the Baldwin Detective Agency, of Roanoke, but appears to have been giving his entire time and attention to the service and interests of the defendant company.  The company called him a special officer, and secured him from the detective agency for the purpose of keeping order in and around the camp, and he was also expected and understood to look after the labor situation, including any violation of law occasioned by labor agents.

The plaintiff asked the officer to take him down to St. Paul and give him an opportunity to prove who he was and clear the matter up, but he refused to do this and took him off the train at Hamlin, a station about four miles from Dante, procured a justice of the peace, and took the plaintiff, the two boys and the justice in an automobile back to Dante to the office of Mr. Lee Long, the general superintendent of the defendant company.  There the plaintiff explained to Mr. Long that he was a member of the firm of Vaughan & Redd, and was simply endeavoring to hire men for the use of his own firm, that it was not his intention to break any law, and that he had been advised by counsel that hiring laborers for himself was not illegal.  Mr. Long reprimanded him for what he was doing and expressed the opinion that he had been guilty of a "damned dirty trick." The plaintiff asked the superintendent if he could not put up a bond and go away, and the former replied that he would call up his attorneys, and that when he heard from them he would let him know.  That afternoon the plaintiff secured an attorney and was allowed by the justice of the peace to give security to appear back at Dante on August 1st for trial.  The justice was not requested to issue any warrant at Hamlin, nor until after he arrived at Dante, and after there had been a preliminary interview between the officer and Mr. Long at the latter's office, followed by another at

which the justice and the plaintiff were also present. The warrant was then issued by the justice, not in the presence of Mr. Long, but, as appeared upon its face, upon complaint made by him; and, while the justice could not state that Mr. Long had specifically directed him to issue the warrant, the interview at which it was determined to have the same issued was in Mr. Long's presence, and the justice understood that it was issued at his instance. Mr. Long's recollection and testimony was to the contrary.

The plaintiff appeared on August 1st, pursuant to his recognizance, but the case was carried over to the next day at the instance of Mr. Long, because he had not yet heard from his counsel. The warrant was then dismissed by his direction.

In their excellent and elaborate brief in this case, counsel for the defendant say: "The action sounded in tort. The real gravamen of the action seems to have been based on an alleged malicious prosecution, but the doctrine of the torts known as false arrest and false imprisonment and the doctrine of the torts known as malicious prosecution are so confused and commingled in the pleading and in the evidence, if not in the instructions themselves, that we do not know whether the verdict and judgment against the defendant were based on an alleged false imprisonment, or an alleged malicious prosecution, or both." And they present a strong argument and array of authorities to show that there could be no liability upon the facts of the case for false arrest and imprisonment. Of this aspect of the case, however, it is sufficient for us to say that the declaration, to which there was no demurrer, contained three counts, neither of which consisted of the single charge of false arrest and imprisonment, that the gravamen of each count rested upon a charge of malicious prosecution, and that the case below was proceeded with by court and counsel as an action for malicious prosecution. This is conceded in the

briefs on both sides, and we shall deal with the case accordingly.

The first and most important assignment of error is that the court erred in refusing to set aside the verdict of the jury as contrary to the law and the evidence. This assignment rests upon the following propositions, advanced by the defendant: (1) That the officer, Thompson, was acting within the scope of his public duties and authority, that he was not the agent of the defendant, and that, if he committed any wrong, either he or his principal, the Baldwin-Felts Detective Agency, and not the defendant, should suffer; (2) that the defendant cannot be held to have authorized or ratified the prosecution, because its superintendent, Long, stated that he could not say what the attitude of the defendant would be until he got the advice of counsel, and dismissed the warrant as soon as he was advised; (3) that if the superintendent authorized or ratified the prosecution, he had probable cause for doing so; and (4) that there was no proof of malice.

Before taking up *seriatim* these propositions, it will be helpful to recall the several essentials of the action for malicious prosecution, as well settled in Virginia. In order to sustain the action, it must be alleged and proved: "(1) That the prosecution was set on foot by the now defendant, and that it has terminated in a manner not unfavorable to the now plaintiff; (2) that it was instituted or procured by the co-operation of the now defendant; (3) that it was without probable cause; and (4) that it was malicious." Burks' Pl. & Pr., sec. 153, p. 233; *Klaff* v. *Va. R. & P. Co.*, 120 Va. 347-8, 91 S. E. 173.

We have already stated in effect that the allegations of the declaration were sufficient; and it is conceded that the dismissal of the warrant without a trial at the instance of the defendant was a sufficient termination of the prosecution to satisfy the first of the above-mentioned requirements

of the action.  *Graves* v. *Scott,* 104 Va. 372, 51 S. E. 821, 2 L. R. A. (N. S.) 927, 113 Am. St. Rep. 1043, 7 Ann. Cas. 480.

Was the prosecution instituted or procured by the "Co-operation of the now defendant?"  The answer to this question will necessarily involve and dispose of the first two propositions upon which it is urged that the verdict of the jury should have been set aside.

There can be no malicious prosecution without the machinery of the law, and it is, therefore, of course, true that the officers of the law must be the final and effective actors. (26 Cyc. 8, and notes 24, 25).  The question in every case is, was the prosecution instigated or brought about by the co-operation of the defendant?  Such instigation or co-operation may be chargeable to the defendant from original steps taken by him to incite the prosecution, or from subsequent adoption and ratification by him of steps which have already been taken or instigated by others.  The instant case was submitted to the jury upon two theories—first, that the injury complained of was done by the servant of the defendant in the course of his employment, and, second, that the defendant subsequently ratified and continued the prosecution.  We are of opinion that there was sufficient evidence to support the verdict of the jury upon either or both of these theories.

The record does not disclose how Thompson derived his authority as an officer of the law, and plaintiff's counsel now contend that there was no proof of his qualification as such, but the trial was proceded with upon the apparent concession that he was an officer, the plaintiff in his own testimony referred to him as such, his official authority was not in any way challenged, and, under these circumstances, it is now too late to raise the question.  The fact that he was an officer, however, did not preclude him from acting also in the capacity of an agent of the defendant.  The employment

of special agents, who are clothed with police powers, is a common and well-known practice among mining, manufacturing and transportation companies.

In 1 Thompson on Negligence, section 598, it is said: "As already seen, where a private person or corporation, under an arrangement with the public authorities, employs a police officer or deputy sheriff for the purpose of guarding the property of such private person or corporation, or preventing disorder in the conduct of its business, or where, at the request of such a person or corporation, one of its employees is clothed with special police powers by the public authorities, to accomplish the same purpose—the private person or corporation will be deemed the principal or master of the person so employed, and will be answerable for his torts committed upon third person, exactly as though he did not sustain the additional relation of a public officer."

In a note by Mr. Freeman to the case of *Ross* v. *Hixon,* 26 Am. St. Rep. 132, it is said: "Perhaps a majority of the great transportation companies have special agents or detectives whose duties include the apprehension of all persons who have committed crimes by which the property of the corporation has been embezzled, stolen or destroyed, or its interests otherwise prejudiced; and while it may be said that the delegation of authority to do these things does not imply that an agent thus constituted shall in any event act maliciously and without probable cause, to this the unanswerable reply has been made by the courts, that one of the consequences liable to attend the delegation of the authority is that of the malicious prosecution of persons who are not offenders, and that when this consequence does result, the corporation must be held answerable."

The duties of the special officer, as described by the superintendent, were "to keep order in the camp and look after such work generally for the corporation; * * * to keep us advised as to when men leave, or when there is any dis-

satisfaction, or anything of that sort." The officer himself testified that there had been some prior trouble at Dante with labor agents securing men around the mines; that he had previously arrested a man on the same charge for which the plaintiff was arrested; that Mr. Long, the superintendent, prosecuted this man, and that trouble of this kind was one of the things he was expected to look after.

The contention of the defendant that Thompson was the employee of an independent contractor (the detective agency), and that, therefore, no liability attaches to it, does not appeal to us as possessing any merit. Immunity from liability for the act of an independent contractor results from the absence of the relationship of master and servant. The general rule on this subject is as follows: " 'An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods and without being subject to the control of his employer, except as to the result of his work.' * * In every case the decisive question in determining whether the doctrine of *respondeat superior* applies is, had the defendant the right to control in the given particular the conduct of the person doing the wrong?" 2 Cooley on Torts, (3d ed.), p. 1098.

Thompson was not on the defendant's payroll; it paid the detective agency for his services, and the agency paid him a salary. But it is apparent from the evidence as a whole that Thompson looked to the defendant for his instructions, was subject to its orders and directions, and that his principal business was to carry out the wishes and the purposes and policy of the defendant company in connection with the preservation of order and the enforcement of law at the plant. He testified that he had been there for eighteen months, that he had always followed the instructions given him by the general superintendent, and that he was sent there by the detective agency "to work under the manage-

ment and superintendency of Mr. Long" and the superintendent stated that if his services had not been satisfactory he could and would have had him removed. In this connection it is a significant fact that the officer did not procure or ask for a warrant until after he had taken the justice of the peace and the plaintiff back to Dante and had a conference with the superintendent. Under the general rule, therefore, as stated in the above quotation from Cooley on Torts, the relationship of master and servant was established, and the independent contractor doctrine does not apply.

But there is a further and even more conclusive reason why the doctrine of *respondeat superior* must be applied in this case. Selection of the servant, payment of wages, power of dismissal, and particularly the power of control, are circumstances to be considered, and are usually decisive, in determining the relation of master and servant; but where the work to be done involves the exercise of personal and non-assignable legal duties, no individual or corporation can escape the doctrine of *respondeat superior* by transferring to third person the selection and payment and the power of dismissal and control of the servant. The owner of an operation or enterprise cannot, by securing through others special agents, even though they be officers of the law, for the prosecution of offenders around the plant, obtain any immunity from liability for malicious prosecutions which such owner would not be equally entitled to if he himself directly selected and paid the agents and expressly retained the power of control and removal. When he undertakes these functions, his duties are personal and non-assignable, and where he arranges for and accepts the service, he will not be permitted to say that the relationship of master and servant does not exist. See *Atlantic Coast Line R. Co.* v. *Tredway's Adm'x*, 120 Va. 735, 93 S. E. 560, 562-3. The solution of the inquiry in every case harks back

to the original question, was the prosecution procured or instituted by his co-operation?

Undoubtedly the burden was, as it is in every such case, upon the plaintiff to overcome the presumption that the officer was acting solely in his official capacity (White's Supp. 1907 to Thomp. Neg., sec. 568; *McKain* v. *B. & O. R. Co.*, 65 W. Va. 233, 64 S. E. 18, 23 L. R. A. [N. S.] 289, 131 Am. St. Rep. 964, 17 Ann. Cas. 634); but there was, in the facts already recited, abundant evidence to justify the jury in finding for the plaintiff on that issue. Even if it be conceded that the prosecution originated in a purely official act on the part of the special agent, the jury might well have found the verdict upon the theory of the defendant's subsequent approval and ratification (*Forbes* v. *Hagman*, 75 Va. 168, 177-8). There can be no reasonable question under the evidence that the warrant was issued after the general superintendent had been consulted and apprised of all the facts, and that thereafter the course and conduct of the case was entirely under his direction and control.

The justice testified in part as follows:

"Q. What was said about a warrant by Mr. Long, did he say that a warrant had to be issued for him there in the office?

"A. I would not be positive Mr. Long said that. Some one said that in the office there.

"Q. Mr. Long was present, and either Mr. Long or some one else said a warrant ought to be issued for him?

"A. I would not state it in them words exactly.

"Q. That is what you understood to be the meaning of the language used in the presence of Mr. Long in his office?

"A. Yes.

"Q. You did not issue the warrant then?

"A. No, sir, I went over to the hotel.   *   *   *

"Q. You issued it in the hotel. You are not certain but

what that was in the afternoon.   It was along after you had dinner, wasn't it? ·

"A. I am not certain.   I believe it was before dinner. * *

"Q. It was after the conversation with Mr. Long?

"A. Yes."

Again, with reference to the continuance of the case from the 1st to the 2nd of August, he testified:

"Q. What is your recollection of the reason the case was continued that day until the next day, Mr. Dickenson?

"A. Well, I think Mr. Long was waiting for his attorney to come.

"Q. Mr. Lee Long, the superintendent of the company?

"A. Yes.

"Q. He was prosecuting it and had it continued until the next day?

"A. Yes.

"Q. Until his attorneys could get there?

"A. Yes.

"Q. What was done with the warrant the next day?

"A. Dismissed at the Commonwealth's cost.

"Q. Who directed it to be dismissed—how happened you to dismiss it?

"A. Mr. Long. * * *

"Q. He had been prosecuting it all along and you disposed of it at his instance?

"A. Yes."

It is contended by counsel for defendants that there was clearly no ratification of the arrest and prosecution because Mr. Long, thinking the warrant had already been issued when the matter was brought to his attention, stated that he did not know what the attitude of his company would be until he got legal advice, and that until then the matter must rest in the hands of the justice of the peace.   There might be considerable force in this contention if we could confine ourselves to the testimony of Mr. Long; but we have

already seen that there was other testimony upon which the jury might have believed that Mr. Long himself authorized the issuance of the warrant after he had been fully informed of the assault and arrest previously made by the special officer.   In this latter view of the affair, which we are obliged to accept under the familiar rule applicable in this court, the defendant, if not already responsible, upon the principle of master and servant, for the previous action of the officer, virtually ratified and adopted that action by continuing the prosecution.   Whatever may be thought of the question whether the special officer, in following the plaintiff on the train, making the assault and the arrest, and bringing him back to Dante, was acting within the scope of his employment by the defendant, there can be no doubt that he intended what he did *for the benefit* of the defendant; and the subsequent continuance of the prosecution by the superintendent, with knowledge of what had gone before, brings the case clearly within the principle of ratification as applied by Judge E. C. Burks in *Forbes* v. *Hagman, supra.*

Nor is the case altered by the established and conceded fact that Mr. Long said he wanted to await the advice of his counsel.   Bearing in mind the rule which compels us now to accept as true all of the facts favorable to the plaintiff which the evidence tended to establish, Mr. Long must be regarded as responsible for the prosecution, and he was reversing the legal order of things in seeking advice from his counsel after he had instigated or ratified the proceeding.   It would seem clear that if he had sought this advice in the first instance, the warrant would not have been issued at all; but whether this be so or not, advice of counsel, to avail as a defense, must have been sought and obtained before the prosecution is begun, must be based upon a full statement of the facts to counsel, and must be acted upon by the defendant.   *Forbes* v. *Hagman, supra,* 1 Cooley

on Torts (3 ed.), 328.  The true purpose for which advice of counsel may be shown in defense of an action for malicious prosecution would seem to be to establish probble cause (Burks' Pl. & Pr., p. 237) ; and the test of probable cause is to be applied at the time the action complained of was taken.  *Forbes* v. *Hagman, supra,* Cooley on Torts, *supra,* p. 326.

Equally without merit, as it seems to us, is the argument that Mr. Long was entitled to a reasonable time for an investigation of the facts, and that he could not be held to have authorized or ratified the proceeding until he had made such investigation.  We fully recognize and would not detract in the least from the influence of the salutary principle that the law favors prosecution for crime.  As was well said by Judge Marshall, of Kentucky, in *Faris* v. *Starke,* 3 B. Mon. (Ky.) 4: "If every man who suffers by the perpetration of a crime were bound, under penalty of heavy damages, to ascertain before he commences a prosecution, that he has such evidence as will ensure a conviction, few prosecutions would be put on foot; the guilty would escape while conclusive evidence was sought for; offenses of every grade would, for the most part, go unpunished, and the penal law would scarcely be more than a dead letter." This language is quoted and relied upon by counsel for defendant, and we endorse it.  But this principle and policy of the law does not go to the extent of inviting the prosecution of citizens who are keeping within their rights merely because some other citizen may have an impression that there is reason to institute a prosecution.  And so, Judge Marshall does not stop with the language above quoted, but adds that the protection which the law extends to the prosecutor depends (1) upon the existence of "such ground as would induce a man of ordinary prudence and discretion to believe in the guilt and to expect the conviction of the person suspected," and (2) upon the prosecutor's *acting* "upon such belief and expectation."

In the instant case, there were no disputed facts for the defendant's superintendent to investigate, nor does it appear that any investigation of facts was attempted by him, except the first interview with the plaintiff, who made a full statement as to his identity and his purpose in seeking to hire men. This statement was true, was not disputed at the time, and is not in any way questioned or discredited by anything in the record. Under the facts stated by him, the plaintiff was not violating the law, and Mr. Long did not have any definite opinion or belief as to whether he was guilty or not. As to the law of the case, he appears to have been in some doubt, but he certainly had no settled belief that the plaintiff was violating the statute. In the course of his direct examination he was asked the following question and gave the following answer:

"Q. It was your idea that this statute protected you and you tried to get legal advice, and as soon as you heard that there was some question about it, you promptly asked that the case be dismissed. Is that a fact?

"A. That is a fact, and to start with I had the feeling that if the statute gave Mr. Redd the right—I did not think anything about the statute at that time—but I had a feeling without reference to the statute that if Mr. Redd had a right to come there and take our men away and thereby injure us, that there was something wrong with the statute, something wrong with the law."

On cross-examination he testified in part as follows:

"Q. You have never understood, Mr. Long, have you, that a man was guilty of a violation of the law for the employment of men to work for himself under that statute?

"A. I have been somewhat confused on that, Mr. Peery. When a man comes to get men or employ men for a firm of contractors, or a corporation, I believe that he is not getting them for himself. I think there is some question there."

The most that can be said, therefore, as to his state of mind with reference to the legal effect of the known and undisputed facts, is that he was in doubt upon that question. There may be circumstances under which a mistaken belief in a legal proposition, like a mistaken belief in the existence of facts, would afford ground for a prosecutor to claim probable cause as a defense in an action like this (20 A. & E. Enc. [2nd ed.], p. 808) ; but such belief must be positive and definite. A confessedly doubtful state of mind will not suffice, either as to the facts or the law.

Coming now to the specific question of probable cause, involved in the third proposition upon which the defendant insists that the verdict should have been set aside, the most recent definition approved by this court is as follows: "Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Va. Ry. & P. Co.* v. *Klaff, ante,* p. 260, 96 S. E. 244.

The foregoing discussion of the facts and circumstances of this case has necessarily taken such a range as to show that there was no probable cause for the prosecution. The facts, which are not disputed, did not warrant it, and the general superintendent of the defendant, who, as the jury had the right to find, and did necessarily find, authorized or ratified the proceeding, did not claim to have had any fixed opinion or belief as to the plaintiff's guilt.

The principle contention of counsel for defendant in this connection is that the statute, as amended in 1916, under which the prosecution was instituted was of doubtful construction, and that the special officer and the superintendent as well as the justice of the peace might well have construed its terms as applicable to the plaintiff. The original statute was as follows: "Any person who hires or contracts with laborers, male or female, to be employed by per-

sons other than himself, shall be deemed to be a labor agent; and no person shall engage in such business without having first obtained a license therefor. Every person who shall without a license conduct business as a labor agent, shall pay a fine of not less than one hundred dollars, nor more than five hundred dollars." (Appendix Va. Code, 1904, p. 2247.) In 1916 this act was amended so as to read (material words in the amendment indicated by italics): "Any person who solicits, hires, or contracts with laborers, male or female, to be employed by persons other than himself, *and every agent of such person,* except as provided in the next following section, shall be deemed to be a labor agent; and no person shall engage in such business without having first obtained license therefor. Every person who shall without a license conduct business as a labor agent, shall pay a fine of not less than one hundred dollars ($100), nor more than five hundred dollars ($500). * * * An emergency existing by reason of the fact that industries are being crippled by the employment of laborers by irresponsible and itinerant labor agents to be transported to other States, this act shall be in force from its passage." (Acts 1916, p. 880, Code, Supp. 1916, p. 635.)

Counsel do not contend that the amendment can properly be construed so as to bring the plaintiff in this case within the inhibition of the statute, but they do contend that there was room for a layman or a justice of the peace to have so construed it. They suggest, as plausible, that "in the light of the decision in *Watts* v. *Commonwealth,* the amendment appears to mean, 'every agent of any person who * * * hires * * * laborers,' and not 'every agent of any person who * * * hires laborers * * * for others than himself.'"

We are unable to see any force in this argument. It presupposes a familiarity with the statutes and with the decision in *Watts* v. *Commonwealth,* 106 Va. 851, 56 S. E. 223,

56

Ann. Cas. 1914 B, 738. It will not be claimed that any intelligent layman or magistrate could read Judge Whittle's opinion in that case and fail to understand that the statute, as it then read, did not prohibit any person, or the agent of any person, who needed men for his own work, from hiring them without paying a license; and we think a bare comparison of the language of the original statute and the amendment is sufficient to show that the effect of the statute has not been at all changed in so far as the controversy here is concerned. The statute was aimed at "irresponsible and itinerant labor agents," and it seems to us that the words "and every agent of such person," in the amendment, plainly and unmistakably refer to the "person who hires" as a labor agent, and not to the "persons other than himself" for whom the laborers are hired.

If, however, it be conceded that the superintendent and the justice might have reasonably and in good faith construed the statute as being applicable to the plaintiff, the final and conclusive answer is that there is no proof that they did so construe it. The superintendent does not claim to have done so, and the justice appears to have been governed entirely by what he understood to be the attitude and wishes of the superintendent. There is nothing at all in the record to indicate that either the special officer or the superintendent deferred in any way to the advice and judgment of the justice; and if they had done so, his advice would not have constituted a defense to this action. In order that legal advice may be used as a shield against a suit for malicious prosecution, it must be given by "a person accepted and licensed by the courts as one learned in the law and competent to be adviser to clients and to the court. 1 Cooley on Torts (3d ed.), p. 327; *Forbes* v. *Hagman, supra;* 18 R. C. L. sec. 31; 19 A. & E. Ency. L. p. 690.

It is further insisted by defendant's counsel that the

fact that the magistrate issued the warrant was in itself *"prima facie* evidence, if not conclusive proof, of probable cause." That it is not conclusive proof follows from the very existence of the law permitting actions for malicious prosecution. There can be no such action until there has first been some sort of process against the plaintiff, and if the issuance of a warrant or the finding of an indictment constituted conclusive proof of probable cause, there could never be a recovery in a suit for malicious prosecution based upon a criminal prosecution. Whether the issuance of the warrant constitutes *prima facie* evidence of probable cause, is an immaterial question, since the burden is always on the plaintiff to negative the existence of such cause, and the jury was so instructed in this case. The provisions of section 3955 of the Code, cited and relied on by defendant, giving a certain discretion to magistrates in the issuance of warrants in criminal cases, do not add anything to the general law of evidence in suits of this character.

What is probable cause as an abstract legal proposition is a question for the court; but where there is any conflict of evidence it is for the jury to determine whether in the particular case such probable cause existed. In the instant case the court gave to the jury a proper definition of probable cause and submitted to them the question of its existence under the evidence.

The remaining proposition upon which it is claimed that the verdict of the jury should have been set aside is that there was no proof of malice. This question was submitted to the jury upon proper instructions, and was clearly within their province. We have already seen that there was evidence sufficient to sustain the verdict in so far as the question of probable cause was involved. "Malice may be, and generally is, inferred from want of probable cause, though, it is said, it is not a necessary inference. It is always a question for the jury under all the circumstances of the

case." *Forbes* v. *Hagman, supra.* The circumstances must warrant the inference (*So. Ry. Co.* v. *Mosby,* 112 Va. 169, 179, 70 S. E. 517) ; but we cannot say that the circumstances in this case, as already detailed, were not sufficient for that purpose. We might not have viewed the evidence in this particular as they did. The labor situation at the coal mines, as elsewhere, is a difficult and delicate one to handle. Mr. Long frankly stated that he was sensitive about it, and needed and wanted to keep his men. This was a natural feeling and a proper attitude. But the plaintiff had not in fact employed or solicited a single one of Mr. Long's laborers, and whether what he said and did in connection with the arrest and prosecution of the plaintiff amounted to what the law recognizes as malice was, under the evidence as certified to us, a question for the jury.

We are of opinion that there was no error in the action of the trial court in refusing to set aside the verdict as being contrary to the law and the evidence.

The remaining assignments of error relate to the action of the trial court in giving and refusing instructions. We shall dispose of them in the order in which they are presented in the petition for writ of error.

Instruction No. 3, given for the plaintiff, was as follows: "You are further instructed that though you may believe from the evidence that the defendant company did not at first set on foot the arrest and prosecution of the plaintiff and that the person who set same on foot transcended his authority, yet if you further believe that the said defendant company, through its superintendent and agent did not disavow the act at once, when it came to its knowledge, but ratified the act and continued the arrest and prosecution, without probable cause, then such continued arrest and prosecution is equivalent to precedent authority and is chargeable to the said defendant." The chief objection urged against this instruction is, that it imposed upon the

defendant the duty of an immediate disavowal of the action
of the special officer and of the justice of the peace before
the defendant had come into the possession of all the facts
and without time to make inquiry in regard thereto. In-
structions, however, must always be read in the light of the
facts of the particular case. Simultaneously with his infor-
mation as to the arrest, the superintendent was given all
information which he has ever possessed in regard to the
facts of the case. There is no sort of dispute as to these
facts and they did not constitute any criminal offense. The
words "disavow the act at once" must be taken with the
explanatory or qualifying language which follows. If the
jury believed from the evidence that the superintendent
"did not disavow the act at once, when it came to his knowl-
edge, but ratified the act and continued the arrest and prose-
cution without probable cause," they had to believe that he
affirmatively ratified what had already been done, and, with-
out probable cause, took over and proceeded with the prose-
cution. There was evidence upon which they might have
believed that this very state of facts existed; and, if it did
exist, his position was not different in law from what it
would have been if he had directed from the beginning every
step that was taken.

Instruction No. 1 given for the plaintiff was as follows:
"The court instructs the jury that in order for the plaintiff
to recover for malicious prosecution in this case, you must
believe, from a preponderance of the evidence, that the
defendant set on foot or instigated the prosecution of the
plaintiff; that the said prosecution has ended favorably to
the plaintiff; that it was without probable cause; and that
it was malicious. Malice as used in this instruction means
any unlawful act which is done wilfully and purposely to
the injury of another, and may be inferred from the want
of probable cause." The only debatable question as to the
correctness of this instruction is whether the court should

have told the jury without qualification that "malice may be inferred from the want of probable cause."

The rule upon this subject is correctly stated in the first head-note to *Southern Ry. Co.* v. *Mosby*, 112 Va. 169, 70 S. E. 517, as follows: "In an action for malicious prosecution malice may be implied from the want of probable cause if the circumstances will warrant the implication, but the existence of malice may be repelled by the circumstances, though there was not good ground for the prosecution, and in such cases the action will not lie." The instruction ought perhaps to have been qualified accordingly, and the language objected to, standing alone, might have constituted reversible error. But the instructions are to be read as a whole, and when so read there is no reasonable probability that the jury could have been misled by the one in question. That instruction itself told the jury in effect that the burden was on the plaintiff to establish by a preponderance of the evidence, not only the negative proposition that the prosecution was instituted without probable cause, but also that it was malicious; and Instruction No. 4, given for the defendant, precluded any probability of a misapprehension in this respect on the part of the jury. The latter instruction was as follows: "The court tells the jury that in order for the *defendant*, S. M. Redd, to prove a case of malicious prosecution on the part of the defendant, Clinchfield Coal Corporation, he must prove by a preponderance of the evidence a concurrence of want of probable cause and malice, and the court tells the jury that neither of these two elements alone, however clearly established, will sustain the action in the absence of the other."

Instruction No. 4, given for the plaintiff, is complained of because it told the jury that if they believed that "the acts complained of were committed with actual malice and a design to injure or oppress the plaintiff, and that the said acts were either previously authorized or subsequently rati-

fied by the defendant, the plaintiff may also recover punitive or exemplary damages, that is to say, the jury will not be limited to mere compensation for the actual damages sustained by him; they may give him such further damages as they may think right in view of all the circumstances proved at the trial as punishment to the defendant, and as a salutary example to others to deter them from offending in like manner." In view of the evidence, as hereinbefore set out, we do not deem it necessary to say more than that in our opinion it was sufficient to warrant the instruction as given. The law upon the subject is well settled. See *N. & W. R. Co.* v. *Neely,* 91 Va. 539, 22 S. E. 367; *Southern Ry. Co.* v. *Grubbs,* 115 Va. 876, 80 S. E. 749.

This disposes of all the assignments of error except the last three, which call in question the action of the court in refusing three of the instructions requested by the defendant.

The court gave five instructions as asked for by the plaintiff, nine as asked for by the defendant, and modified and gave a tenth one for the defendant. These instructions covered the law of the case adequately, and we find no error in the rejection of the three in question. In so far as they asserted correct propositions of law applicable to the case, they were substantially embodied in other instructions. In some respects they were objectionable for reasons which have already been sufficiently discussed in this opinion.

Upon the whole case, we are of opinion that the judgment must be affirmed.

*Affirmed.*