# Richmond

CLOSGARD WARDROBE COMPANY v. CHARLES R. NORMANDY.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Browning, JJ.

The opinion states the case.

*Albert V. Bryan, Harry R. Thomas* and *Homer Randolph Thomas,* for the plaintiff in error.

*Lawrence W. Douglas, Wm. B. Wright* and *Bramhall & McCabe,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action was brought by Charles R. Normandy against Closgard Wardrobe Company, to recover damages for alleged malicious prosecution, and upon the trial the jury found a verdict in favor of the plaintiff which the court refused to set aside, and upon which it entered judgment.

In 1917, the plaintiff, a resident of the District of Columbia, became general manager of the factory of Closgard Wardrobe Company, a domestic corporation operating in Arlington county. In March, 1925, the defendant corporation was chartered under the laws of the District of Columbia and took over the business and properties of the Virginia corporation, which was dissolved. After the incorporation of the defendant, plaintiff continued in the capacity of general manager at a salary of $1,800.00 per annum, in addition to one-half of the annual profits derived from the operation, based upon the reports furnished by the plaintiff, whose duty it was to keep the books of the defendant.

At a meeting of the board of trustees (having the same functions as a board of directors), held on April 14, 1930, dissatisfaction was manifested in regard to the reports of the plaintiff, and an audit of the books of the defendant was ordered. The audit was made, and when compared with the reports of the plaintiff certain discrepancies were discovered. As a result of the audit, interrogatories were handed the plaintiff with the request that he explain the variance between the books of the defendant and his reports. Plaintiff's reply, in writing, to the request was a general refusal to answer the questions propounded. Thereupon, a meeting of the board was held in the city of Washington, for the purpose of affording plaintiff an opportunity to be heard. Plaintiff declined to participate in the meeting, and this resolution was adopted:

"In view of the above facts it appears that Mr. C. R. Nor-

mandy has violated his contract with the company and in view of his refusal to comply and furnish the information as requested, and in view of the fact the trustees are not satisfied with the manner in which the general manager has conducted the business of the company, it was moved and seconded that Mr. Normandy be relieved of the managership and further employment in the Closgard Company."

Plaintiff was notified by letter of his dismissal, and was requested to turn over all keys and records belonging to defendant, and further requested to absent himself from the factory, and to cease interfering with its operations. This request plaintiff likewise refused to comply with, and he continued in his capacity as manager. Thereupon, the president of the defendant consulted its retained counsel, a practicing attorney in the city of Washington, as to the proper procedure for enforcing the dismissal of plaintiff and preventing his continuance as manager of the plant. After an alleged full disclosure of the facts, and after consultation with the trial justice of Arlington county and Mr. Green, a licensed attorney and the apparent assistant to the attorney for the Commonwealth of the county, the defendant's counsel advised and had issued against the plaintiff a warrant charging him with criminal trespass. On June 10, 1930, the officer authorized to execute the warrant, went to the factory, explained the purport of the warrant to plaintiff, and directed him to follow in his (plaintiff's) car to the court house. Plaintiff proceeded as directed, the case was continued until the next morning, and plaintiff was released on his own recognizance. Upon the hearing, the plaintiff was found not guilty.

On the trial the defendant introduced Kenneth N. Parkinson who testified that he was a resident of the District of Columbia; that he had been a duly licensed attorney for a period of seven and a half years, actively engaged in the practice of the law in the District of Columbia; that he was

the retained counsel of the defendant; that the president of the defendant fully disclosed to him the plaintiff's status with the company; that in addition thereto he made an investigation of the records of the defendant, construed the contract of employment, personally sought an interview with the plaintiff, in an effort to adjust the matter; that plaintiff refused to discuss the question with him; that he prepared a second letter, notifying plaintiff of his dismissal, and delivered the letter in person; that later he was informed by the treasurer of the defendant that plaintiff was still on the property in the capacity of manager, opening the mails and receiving and issuing checks, was in complete control of the safe, refusing to disclose the combination to the safe and denying access to the records; that he again went to the plant, sought an interview with plaintiff which was refused, was ordered off the premises by plaintiff and told to take such action as he saw fit; that having been instructed by the president of the defendant to take such steps as he deemed advisable to accomplish the end sought, he went to the office of the attorney for the Commonwealth, to seek his advice in the matter; that the attorney for the Commonwealth was absent; that he related the facts to H. Bruce Green, a competent and reputable member of the Arlington bar, who occupied a desk in the office of the attorney for the Commonwealth, and who assisted him in the prosecution of criminal cases; that he was directed by Green to see the trial justice and have the warrant issued; that the warrant was issued upon his advice and executed at his direction; that he had subsequently been admitted as a practitioner in this State.

Upon the conclusion of the evidence, the defendant requested the court to give this instruction to the jury:

"The court instructs the jury that if they believe from the evidence that the defendant corporation, before procuring the arrest of the plaintiff, Charles R. Normandy, made a

full and fair statement of information in its possession to an attorney, accepted and licensed by the courts, and that it acted honestly and in good faith upon the advices so sought and given, then they must find for the defendant."

The court refused to give the above instruction, as presented, and gave in lieu thereof this instruction:

"The court instructs the jury that if they believe from the evidence that the defendant corporation, before procuring the arrest of the plaintiff, Charles R. Normandy, made a full and fair statement of information in its possession to an attorney, accepted and licensed by the courts *of this State*, and that it acted honestly and in good faith upon the advice so sought and given, then they must find for the defendant." (Italics added.)

Thereupon the plaintiff requested and the court further instructed the jury as follows:

"The court further instructs the jury that while under certain circumstances the advice of an attorney will of itself justify the issuance of a warrant of arrest, such circumstances exist only when *such advice comes from an attorney licensed to practice law in the State of Virginia* and a full and frank statement of all the facts and circumstances of the case must have been given to such attorney before he has advised such action. An attorney's advice will not constitute probable cause unless the attorney is so qualified and unless he had heard a full, fair and complete statement of the facts in the case before such advice is given.

"And, in order to rely upon such advice, the action shall be based upon the advice, and not upon a determination previously given." (Italics added.)

The action of the court in refusing the instruction as offered, in amending the instruction as given, and in giving the instruction requested by the plaintiff is assigned as error. The chief complaint of the defendant is based on the action of the court in inserting in the instructions the language indicated by italics.

The precise question involved in this case is one of first impression in this court. An exhaustive examination of the reported cases and text-books dealing with the subject of advice of counsel as a defense in a case of this nature has failed to reveal any discussion throwing light on the question. The general doctrine has been frequently stated by this court and many other courts.

In *Saunders* v. *Baldwin*, 112 Va. 431, 71 S. E. 620, 622, 34 L. R. A. (N. S.) 958, Ann. Cas. 1913 B. 1049, it is held that "the advice of a reputable attorney at law, properly sought and acted on in good faith, constitutes probable cause as a matter of law, and furnishes a complete defense to an action of malicious prosecution."

In *Clinchfield Coal Corporation* v. *Redd*, 123 Va. 420, 96 S. E. 836, 843, Judge Kelly said: "In order that legal advice may be used as a shield against a suit for malicious prosecution, it must be given 'by a person accepted and licensed by the courts as one learned in the law and competent to be adviser to clients and to the court.'" Citing Cooley on Torts (3d ed.), page 327; 18 R. C. L. section 31.

In *American Ry. Express Co.* v. *Stephens*, 148 Va. 1, 138 S. E. 496, 501, Judge Chichester, dealing with the question of the availability of advice of counsel as a defense to the action of malicious prosecution, said: "Whatever the rule elsewhere, it has long been the established rule in Virginia, that where a defendant acts in good faith upon the advice of reputable counsel, after full disclosure of the facts, he is considered to have had probable cause although the advice of counsel may be wrong, and he will not be liable in damages."

It is to be observed that no limitation is placed on the word "counsel," in any one of these cases. No distinction is drawn between reliance on advice of private counsel and the advice of a general prosecutor, or on the advice of resident or non-resident counsel. The language employed in

the opinions indicates the employment of the word "counsel" in its broadest sense. This seems to be true generally as indicated by the rule laid down in 38 C. J. at page 430: "The advice to avail as a defense must have been given by a competent, disinterested, regularly admitted and practicing attorney and counsellor at law in good standing who is not the defendant himself. A party may consult his regularly employed attorney if he does so in good faith. It is not necessary that the advice should be given by an independent solicitor, one wholly unconnected with defendant."

Our attention has been called to the case of *Murphy* v. *Larson*, 77 Ill. 172, as authority for the court's action. It appears in that case that Murphy, the defendant, sought to defeat the action of malicious prosecution by offering to prove that he had consulted one Payne, who was ostensibly a licensed attorney, and, after a full disclosure, had acted upon his advice in suing out the warrant of arrest. It developed, however, that Payne was not a regularly licensed attorney, had never qualified to practice law, and that his actual practice was confined to appearing in cases arising before a justice of the peace. In holding that the defense did not measure up to the required standard, the court went further and said: "Had Payne been a regular attorney, licensed under the laws of this State, in good standing, competent to give advice, and had he counseled the arrest of plaintiff on a charge of larceny, after hearing a full statement of all the facts * * * such advice would constitute probable cause, and an effectual bar to any action for malicious prosecution; * * * ." The real point decided in that case was that the defendant could not avail himself of advice given by one who was not a duly licensed, practicing attorney. The language, "a regular attorney, licensed under the laws of this State," is *obiter dicta* and is not authority for the proposition here asserted.

Counsel for plaintiff concede that Mr. Parkinson fully

measures up to all the requirements necessary to make his advice available if there was a full disclosure of the facts, and that he was admitted to practice law in this State under the prevailing rules of comity when this case was tried. Hence, by the ruling of the trial court we have presented the anomalous situation of one being incompetent to advise the issuance of the warrant which culminated in the present litigation, and yet competent to defend in this State (by reason of his admission to the bar by the trial court) the very litigation resulting from his incompetent act. This is too provincial an application of the rule. In this era when the standards of the legal profession are being more firmly established on the foundation of legal competency and integrity of character, it would be a step backward to restrict the rule.

It is inconceivable to us that the advice given by Honorable John W. Davis, Dean Pound, or the Honorable Elihu Root, could not be relied upon as a bar to an action by a litigant in a Virginia court without their first qualifying as practitioners in this State, when, without cavil, in a case of this nature, we ofttimes accept the advice of the merest tyro in the profession who has been admitted to the bar.

Our conclusion is that if counsel is competent, reputable, and has been regularly admitted to practice law in any State of this Union, then he is qualified, after hearing a full disclosure of the facts, to give advice upon which a criminal warrant may be issued.

The judgment of the trial court will be reversed, and the case remanded.

*Reversed and remanded.*