## NORTH BRITISH & MERCANTILE INS. CO. v. FELDMAN.

### No. 5352.

Circuit Court of Appeals, Fourth Circuit.

May 9, 1945.

Stephen Nettles, of Greenville, S. C., and John I. Cosgrove, of Charleston, S. C., for appellant.

Louis M. Shimel, of Charleston, S. C. (Claud N. Sapp, of Columbia, S. C., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PER CURIAM.

This case is before the court for the second time. On the first appeal the case was sent back for a new trial (Feldman v. North British & Mercantile Ins. Co., 137 F.2d 266), at which the jury returned a verdict of $1,000 for the plaintiff. The questions raised in the present appeal relate solely to the evidence of (1) lack of probable cause and (2) participation of the de-

fendant in the alleged malicious prosecution of the plaintiff.

These facts are undisputed. Feldman owned a small clothing and shoe store where he also made shoe repairs. Three doors away he conducted a liquor store which had an uninsured stock worth $3,000. Prior to August 4, 1935 he placed a policy of fire insurance with Olasov, an agent for North British, on his clothing and shoe store in the amount of $1,000 of which $900 was on merchandise and $100 on shoe repairing equipment. The actual policy was not received until August 5, 1935. Feldman closed his clothing store at about 12 P. M. on the night of August 4. After going for a ride with some friends, he went home. About 2 A. M. the town policeman discovered smoke issuing from Feldman's store. He summoned the fire department and sent a boy for Feldman to unlock the door. Feldman unlocked the front door but it was necessary for the firemen to break in the back door. When the rear door was opened, flames flashed over the walls and ceiling. On the morning after the fire, Feldman received the policy which had been mailed by Olasov. He showed it to his lawyer and notified Olasov of the loss. On August 13, a fire insurance adjuster, a salvage expert, Feldman and his lawyer fixed the amount of the damage at $875. The salvage expert estimated that the value of the insured goods and equipment was $1900. Shortly thereafter, Whitmire, the deputy insurance commissioner for the State of South Carolina, and Forbes, a fire detective of the National Board of Underwriters, an association of which North British is a member, investigated the fire, interrogated Feldman and examined the store. Whitmire and Forbes discussed their evidence with McLeod, a solicitor for the state, who advised them to swear out a warrant for Feldman's arrest. On August 16 the warrant was sworn out by Whitmire in Forbes' presence, charging Feldman with arson, but the charge was dismissed by the magistrate on August 29 and the case was dropped. The adjusted claim for fire damage was paid some time in October.

■ The defendant raised the question of the sufficiency of the evidence by a motion for a directed verdict. At the conclusion of the trial a motion for a verdict non obstante veredicto was made and a motion for a new trial, both on the ground that there was not sufficient evidence to go to the jury. All three motions were refused. In support of its contention that it was error not to direct a verdict for the defendant, the defendant points to certain conflicting evidence which it is claimed shows that there was probable cause for the prosecution for arson. In considering such a question it is the duty of the court to take the evidence and the inferences therefrom most favorable to the plaintiff. Standard Oil Co. of New Jersey v. Midgett, 4 Cir., 116 F.2d 562; Jennings v. Clearwater Mfg. Co., 171 S.C. 498, 172 S.E. 870.

The first suspicious circumstance urged by the defendant is Feldman's denial that he knew he was insured at the time of the fire and that he had unsuccessfully attempted to obtain insurance on his stock from a local agent before he placed a policy with Olasov, an agent for North British. The defendant points to the testimony of Walker, a postal railway clerk who also sold insurance, that Feldman tried to get a policy of fire insurance from him but that he did not write it. Feldman denies this conversation. Feldman testified that he was approached by Olasov who asked him to buy a policy. Feldman agreed to take one for $1,000 and it was not until August 5, the morning after the fire, when Feldman received the policy that he knew he was insured at all. Olasov's testimony differs widely from the story told by Feldman. Olasov produced a letter from Feldman dated July 24 in which Feldman made inquiry about insurance. On July 26 Olasov wrote to Feldman enclosing a ten day binder and requested further information about the location of Feldman's store. On July 27 Olasov again wrote to Feldman and said that he had obtained the necessary information from another source but asked how the insurance should be prorated between merchandise and shoe repair machinery. A letter from Feldman, dated July 31, was produced in which Feldman stated how the insurance should be prorated and in which was added: "But I take it I am covered for the full $1,000 until other policies are issued, as I have no fire insurance and a large stock." Walker also testified that Feldman had shown him a ten day binder several days before the fire and Walker told Feldman that he was fully covered until the policy was issued or until the application for insurance was rejected.

■ The District Judge pointed out this conflict of testimony in charging the jury and told them they must resolve the conflict on the credibility of the witnesses. No exceptions were taken to his charge. If the defendant's evidence that Feldman knew he was insured is accepted, it has little probative value on the issue of probable cause when it is remembered that Feldman had an uninsured stock of liquor worth $3,000 stored three doors away which would be jeopardized by a fire and that the goods and equipment in the burned store were worth $1900, but were covered by only $1000 worth of insurance. At best, the evidence under consideration bears only on the credibility of Feldman as a witness and the District Judge properly put that issue before the jury.

The defendant next points to certain incidents surrounding the actual fire which it is said give rise to the inference that there was probable cause to believe that Feldman may have played a part in starting the fire. The evidence relied on tends to show that when the firemen reached the store both doors were locked and Feldman was sent for to unlock them. Feldman arrived "dressed as usual", unlocked the front door and stated that there was gasoline on the premises. The fire chief went to the back door which was fastened from the inside to break it in. Behind the store, he stumbled over a shoe repairing machine which had been placed about five feet outside the door. The machine was not there on the morning of August 6. When the rear door was opened, the flames flashed over the walls which were made of brick and concrete and over the ceiling. The fire was mostly confined to the rear of the store where the shoe repair machines had been placed and there was a distinct odor of kerosene.

■ Feldman's account of these events is that he was summoned to open the door. He dressed hurriedly and when he arrived at the store he warned the firemen that there was gasoline on the premises. There were several cans of oil and grease used in shoe repairing in the back of the store where the machines were placed. By their own testimony the firemen had admitted finding these cans and kicking them outside the building. Feldman testified, and this testimony is supported by that of the owner of the store, that the walls of the store had a wooden wainscoting around them. In the back of the store where

the machines were kept and where the fire was centered, the walls and floor were splattered with oil from the machines. Feldman said that none of the shoe repair machines was missing and the fire chief agreed with Feldman's testimony that the machines were too heavy for one man to move. Since the evidence most favorable to the plaintiff must be taken, it cannot be said that there was no evidence to submit to the jury or that their verdict should not be upheld.

■ The defendant also contends that Forbes and Whitmire were acting upon the advice of the prosecuting officer of the state when they swore out the warrant, and that this circumstance shows that there was probable cause for their action. On this point the judge instructed the jury that the advice of the prosecuting officer raised a presumption of probable cause provided that the investigators had disclosed to him all of the facts. No exception was taken to this instruction. There was no direct evidence as to precisely what disclosures were made by the investigators to the prosecuting attorney and hence there was no ground for a directed verdict on this account. Closgard Wardrobe Co. v. Normandy, 158 Va. 50, 163 S.E. 355, 81 A.L.R. 511; Sudnick v. Kohn, 81 W.Va. 492, 94 S.E. 962; Smith v. Eastern Bldg. & Loan Ass'n, 116 N.C. 73, 20 S.E. 963; Thurber v. Eastern Bldg. & Loan Ass'n, 116 N.C. 75, 21 S.E. 193; Restatement (Torts) § 666; 34 Am.Jur. (Malicious Prosecution), § 78; 38 C.J. (Malicious Prosecution) § 78.

■ In connection with its contentions, the defendant stresses the fact that Feldman did not bring the present action until almost six years after the criminal charge against him had been dismissed. He offered the explanation that in the interim he was endeavoring to obtain insurance on his property but in spite of repeated applications he was unsuccessful. He brought the suit after he had become convinced that the insurance companies had united in an agreement to refuse him insurance of any kind. Whatever view may be taken of these circumstances, they furnish no ground, either alone or when taken in connection with other evidence, for a directed verdict on the defendant's behalf.

■ The next point relates to the participation of the defendant in the prosecu-

tion of the criminal case. Feldman's evidence shows that immediately after the fire he was visited by an insurance adjuster of the North British who offered $150 in full settlement of the loss. Feldman refused and on August 13 a salvage man appraised the insured property at $1900 and agreed that a fire loss of $875 had been sustained. The investigation by Whitmire and Forbes and the arrest of Feldman followed. Forbes was an agent of the National Board of Underwriters to which the North British belonged. In our opinion on the first appeal we said that it was a fair inference from these facts that the investigation had been set in motion by the North British and that the officers who caused the arrest were acting on its behalf. At the second trial the defendant offered no evidence to the contrary. It is obvious that the evidence on this point was sufficient to go to the jury.

The judgment of the District Court is affirmed.