## Richmond.

## S. F. GUGGENHEIMER v. SOUTHERN SEMINARY, INC., AND R. L. DURHAM.

### January 15, 1925.

1. MALICIOUS PROSECUTION—*Discharge of Public Duty—Honest Belief that Crime has been Committed.*—No person should be too hasty to institute a criminal prosecution against another, and thereby injure the character and reputation of an innocent and honest citizen. But, in the interest of good order and society in general, persons who have an honest belief that a crime has been committed and have facts which will induce a reasonable man to entertain that belief should not be deterred in the discharge of a public duty by the fear that they will be mulcted in damages, if the person accused is acquitted, since under such circumstances damages will not be awarded against them.

2. MALICIOUS PROSECUTION—*Probable Cause—Kidnapping—Case at Bar.*— In the instant case, an action for malicious prosecution, plaintiff took a school girl from a seminary to his home for a visit without the knowledge or consent of the principal of the seminary. Plaintiff was a friend of the girl's mother and had telegraphed her asking her consent, but had received no reply, and as a matter of fact the mother never gave her consent.

   *Held:* That while the principal in swearing out a warrant, as soon as he knew plaintiff had taken the girl away, may have taken an action unnecessary for her protection, yet it could not be said that he did so without probable cause to believe that plaintiff had .violated section 4409, Code of 1919.

3. MALICIOUS PROSECUTION—*Elements.*—In order to sustain an action for malicious prosecution the plaintiff must allege and prove that the prosecution was set on foot by the defendant, and that it has terminated in a manner not unfavorable to the plaintiff; that it was instituted or procured by the cooperation of the defendant; that it was without probable cause; and that it was malicious.

4. MALICIOUS PROSECUTION—*Probable Cause—Definition.*—Probable cause is knowledge of such a state of facts and circumstances as excites the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Public policy requires that persons justly suspected of crime should be fairly prosecuted.

5. KIDNAPPING—*§4409, Code of 1919—"Or" Used Disjunctively.*—Section 4409, Code of 1919, makes it a crime for any person, other than the father or mother of a child, to illegally seize, take, or secrete the child from the person having lawful charge of such child. The word "or" is used in its disjunctive sense, and it is only necessary that the prosecution prove that the child was illegally seized, or taken, or secreted, in order to make the offense complete.

6. KIDNAPPING—*Girls School—Consent of Secretary.*—The consent of the secretary and treasurer of a girls school to the carrying off of one of the pupils against the will of the principal does not make the carrying off lawful.

7. OFFICERS AND AGENTS OF PRIVATE CORPORATIONS—*Secretary—Treasurer.*—A secretary is a mere servant. His position is that he is to do what he is told, and no person can assume that he has any authority to represent anything at all. The treasurer of a private corporation is a mere ministerial agent or employee, and does not possess, by virtue of his office, any implied or *ex officio* powers of which the courts will take judicial notice.

8. KIDNAPPING—*§4409, Code of 1919—Consent of Child.*—The fact that a child is carried away with its own consent does not excuse or lessen the offense under §4409, Code of 1919, or prevent its consummation.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*Pollard & Smith, Smith & Gordon,* and *Jno. M. Heinz,* for the plaintiff in error.

*Wyndham R. Meredith,* for the defendants in error.

WEST, J., delivered the opinion of the court.

This is an action by S. F. Guggenheimer against Southern Seminary, Incorporated, and R. L. Durham to recover damages for an alleged malicious prosecution.

Guggenheimer was arrested and prosecuted under a warrant sworn out by Durham before the mayor of the city of Buena Vista, charging that Guggenheimer did, on the 24th day of May, 1921, "unlawfully and feloniously, illegally seize, take and secrete a certain child, namely, Ruth Hanks, from the person, to-wit, Southern Seminary, Incorporated, having lawful charge of such child, the said Guggenheimer being then and there neither the father nor mother of said child." The section of the Code of which the warrant charges a violation is 4409, which reads as follows:

"*Section 4409.—Illegal seizure, etc., of a child, how punished.*—If any person, other than the father or mother of a child, illegally seize, take, or secrete a child from the person having lawful charge of such child, he shall be confined in the penitentiary not less than two nor more than five years, or, in the discretion of the jury, in jail not exceeding one year, and be fined not exceeding one thousand dollars ($1,000.00)."

Upon the hearing on June 2, 1921, the mayor of Buena Vista found the defendant not guilty.

On July 28, 1921, Guggenheimer filed his declaration in this case. On March 1, 1922, the jury returned a verdict in favor of the plaintiff for $10,000.00, subject to the decision of the court on the defendant's demurrer to the evidence. On July 28, 1922, the court sustained the demurrer and entered the judgment for the defendants of which the plaintiff in error now complains.

The defendants offered no evidence. The following material facts, leading up to the prosecution, appear from the evidence introduced on behalf of the plaintiff:

John Dabney Smith was president and Mrs. F. M. Burton secretary and treasurer of Southern Seminary, Incorporated, Buena Vista, Virginia. E. H. Rowe and R. L. Durham were its principals with "full power to

manage and conduct all the administrative, educational and financial affairs of the institution." Ruth Hanks, the sixteen year old daughter of Mrs. Maud N. Hanks, of Minneapolis, Minnesota, was a student at the Southern Seminary. S. F. Guggenheimer and his family resided in the city of Richmond, Virginia, and were friends of Mrs. Hanks and her daughter. Ruth Hanks had visited the Guggenheimer home during Christmas week 1920, and again in January, 1921. Mrs. Hanks and Mrs. Guggenheimer had frequently exchanged visits.

The Guggenheimers attended the commencement exercises at Southern Seminary, in May, 1921, and conceived the idea that they would have Ruth Hanks return home with them to Richmond, in their automobile, and make them a visit before leaving for her home in Minneapolis.

On Monday, May 23rd, Mrs. Guggenheimer told Durham that they would like Ruth to go home with them. He replied that Ruth's mother had telegraphed him to send Ruth home immediately. Mrs. Guggenheimer insisted that she saw no reason why Ruth should not go home with her and asked if Durham would allow her and her husband to communicate with Mrs. Hanks. Durham consented but stated that they would have to get a message back in time for Ruth to reach the train which would leave Buena Vista between two and three o'clock. The Guggenheimers telegraphed Mrs. Hanks at 1:17 P. M. requesting her to direct the school authorities to permit Ruth to come to Richmond with them. Mrs. Hanks was not at home and did not receive the telegram until ten o'clock that night, and thinking Ruth was on her way home made no reply.

Immediately after his conversation with Mrs. Guggenheimer on the 23rd, Durham had an interview with

Mr. Guggenheimer in which it was agreed that the school authorities would hold Ruth until the next day until the Guggenheimers could communicate with Mrs. Hanks. Without waiting for Mrs. Hanks' reply to their telegram, and without Durham's knowledge or consent, the Guggenheimers took Ruth in their car on the morning of May 24th, and carried her to Richmond. Not knowing that Guggenheimer had taken Ruth away, Durham wired Mrs. Hanks on May 24th to instruct him what to do with the request of the Guggenheimers to take Ruth home with them.

On May 25th Mrs. Hanks replied to the Guggenheimers' telegram of the 23rd at Buena Vista: "Think best Ruth come directly home." On the same day she replied to Durham's telegram of May 24th: "Have Ruth come to Minneapolis at once."

[1] No person should be too hasty to institute a criminal prosecution against another, and thereby injure the character and reputation of an innocent and honest citizen. But, in the interest of good order and society in general, persons who have an honest belief that a crime has been committed and have facts which will induce a reasonable man to entertain that belief should not be deterred in the discharge of a public duty by the fear that they will be mulcted in damages, if the person accused is acquitted, since under such circumstances damages will not be awarded against them.

[2] While Durham, in swearing out the warrant as soon as he learned Guggenheimer had taken Ruth away, may have taken action unnecessary for her protection, we are unable to say, under the facts in the case, that he did so without probable cause to believe Guggenheimer had violated the statute, Code section 4409, *supra*.

[3] In order to sustain an action for malicious prosecution the plaintiff must allege and prove that the prose-

cution was set on foot by the defendant, and that it has terminated in a manner not unfavorable to the plaintiff; that it was instituted or procured by the cooperation of the defendant; that it was without probable cause; and that it was malicious. Burks Pl. & Pr. p. 233.

[4] In *Va. R. & P. Co.* v. *Klaff*, 123 Va. 266, 96 S. E. 246, the court, speaking through Judge Prentis, said: "Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Public policy requires that persons justly suspected of crime should be fairly prosecuted."

[5] The statute under which the warrant was drawn makes it a crime for any person, other than the father or mother of a child, to illegally seize, take, or secrete a child from the person having lawful charge of such child. The word "or" is used in its disjunctive sense, and it is only necessary that the prosecution prove that the child was illegally seized, or taken, or secreted, in order to make the defense complete. Durham is presumed to know the law, and he knew that Guggenheimer had taken Ruth to Richmond without the consent of her parents and against the protest of himself as principal of the Southern Seminary which had lawful charge of her. It is clear that knowledge of such facts would have excited the belief in a reasonable mind that Guggenheimer was guilty of the crime alleged in the warrant.

Guggenheimer perhaps knew nothing of the existence of the statute and was probably actuated by the highest motives, desiring to add to the pleasure of the child, who was anxious to go with them to Richmond, but this does not relieve him of the burden to show that the commencement of the criminal proceeding was without

probable cause, on the part of the Southern Seminary and Durham, to believe that he was guilty of such crime. This he has failed to do.

[6, 7] The plaintiff relies upon the fact that Mrs. Burton, secretary and treasurer of the Seminary, expressed her willingness for Ruth to go with them; but her consent does not make Guggenheimer's conduct lawful.

"A secretary is a mere servant. His office is that he is to do what he is told, and no person can assume that he has any authority to represent anything at all." *Taylor v. Sutherlin-Meade Co.*, 107 Va. 787, 792, 66 S. E. 132, 134.

The court in the case just cited also approves the doctrine that the treasurer of a private corporation is a mere ministerial agent or employee and does not possess, by virtue of his office, any implied or *ex officio* powers of which the courts will take judicial notice.

[8] The fact that Guggenheimer carried Ruth away with her consent does not excuse or lessen his offense, or prevent its consummation. *Davenport Case*, 1 Leigh, (28 Va.) 588.

Our conclusions on the demurrer to the evidence make it unnecessary for us to consider the appellee's motion to dismiss the writ of error.

The judgment of the trial court is without error.

*Affirmed.*