# Wytheville.

## VIRGINIA RAILWAY AND POWER COMPANY V. KLAFF.

### June 13, 1918.

### Absent, Burks, J.

1.  MALICIOUS PROSECUTION—*Want of Probable Cause.*—An action for malicious prosecution cannot be maintained unless it appears that the prosecution was instituted without probable cause.

2.  MALICIOUS PROSECUTION—*Probable Cause—Burden of Proof.*—The burden of proving that there was no probable cause is upon the plaintiff.

3.  MALICIOUS PROSECUTION—*Probable Cause—Questions of Law and Fact.*—If there is no conflict in the evidence, the existence or nonexistence of probable cause is a question of law for the court.

4.  MALICIOUS PROSECUTION—*Probable Cause.*—Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Public policy requires that persons justly suspected of crime should be fairly prosecuted.

5.  MALICIOUS PROSECUTION—*Probable Cause.*—It is reprehensible to institute criminal prosecutions lightly and thus to injure the character of honest men, but it should be constantly borne in mind that, in the interest of good order and society, those who have honest reason to believe that crimes have been committed and have knowledge of facts sufficient to justify such belief, ought not to be deterred from their public duty by the fear of having a jury assess damages against them if the accused should be acquitted. The courts, in the public interest, should maintain unimpaired the doctrine that the existence of probable cause is a complete defense to an action for malicious prosecution.

6.  MALICIOUS PROSECUTION—*Probable Cause—Case at Bar.*—In the case at bar, plaintiff, a junk dealer, was indicted under section 3715, Code of 1904, charged with having bought and received railroad brass and metal, the property of the defendant rail-

road company. There was also a count in the indictment charging him with the larceny of the property. The uncontradicted facts in the case clearly showed the existence of probable cause for the prosecution of plaintiff. A licensed junk dealer who receives recently stolen property, or who buys brass in violation of section 3715, may not escape just suspicion by merely showing, as the plaintiff here did, that he was frank, concealed no fact within his personal knowledge, and that he did not personally receive such goods. If he closes his eyes to the criminal or suspicious acts of his subordinates and employees, and accepts the benefit of such services to him, while he may, as in this case, upon his trial, secure an acquittal, he ought not to expect to escape prosecution.

7. MALICIOUS PROSECUTION—*Malice—Refusal to Prosecute Before Justice—Case at Bar.*—In the instant case counsel for the plaintiff insisted that malice was shown because the railroad's counsel refused to institute a prosecution before a justice of the peace, although urged to do so by the Commonwealth's attorney, where the plaintiff, upon the hearing, might have made a sufficient explanation.

*Held:* That the defendant, whether actuated by malice or prudence, had the right to decline to take the entire responsibility for instituting the prosecution and, after disclosing the facts, to leave that responsibility with the Commonwealth's attorney and the grand jury. And, therefore, the insistence of defendant's attorneys, who were sustained in their position by the judge of the court that the matter be brought before a grand jury, was of little consequence in showing malice on the part of defendant. Moreover, if the facts shown by the record in this case had been submitted to a justice of the peace, it would have been the duty of the justice to send the case to the grand jury.

Error to a judgment of the Court of Law and Chancery of city of Norfolk, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Reversed.*

The opinion states the case.

*E. Randolph Williams, T. Justin Moore, W. H. Venable* and *H. W. Anderson,* for the plaintiff in error.

*Rumble & Campe,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

This case has been previously before this court, and a demurrer to the declaration was overruled. *Klaff* v. *Va. Ry., etc., Co.,* 120 Va. 347, 91 S. E. 173. The case has since been tried and there was a verdict and judgment for the plaintiff, of which the defendant company is here complaining.

This is an action by Klaff against the Virginia Railway and Power Company to recover damages for an alleged malicious prosecution. Isaac Klaff, a merchant handling hides and metal, licensed as a junk dealer, and engaged in the general junk business, was indicted under section 3715 of the Code, and charged with having bought and received railroad brass and metal, consisting of certain car journal bearings, car check plates, trolley wheels, and armature bearings, the property of the defendant company, with intent to defraud, from Samuel Frost and H. Coplan. There was also a count in the indictment charging him with the larceny of the same property. At the trial, the Commonwealth's attorney, with the consent of the presiding judge, recommended a verdict of acquittal, and he was acquitted by the jury.

It is fundamental that an action for malicious prosecution cannot be maintained unless it appears that it was instituted without probable cause. The burden of proving that there was no probable cause is upon the plaintiff, and if there is no conflict in the evidence, the existence or nonexistence of probable cause is a question of law for the court. *Singer Mfg. Co.* v. *Bryant,* 105 Va. 423, 54 S. E. 320; *Cox* v. *Lauritsen,* 126 Minn. 128, 147 N. W. 1095; *Williams* v. *Pullman Co.,* 129 Minn. 97, 151 N. W. 895, Ann. Cas. 1916 E, 374.

The pertinent facts leading up to this prosecution, so far as we deem it necessary for the determination of the question before us to state them, shown by the testimony, considered as upon a demurrer to the plaintiff's evidence by the defendant, are these: An agent of the defendant company visited the store of the plaintiff on November 3, 1914, selected and bought a small piece of brass from the stock exhibited to him, and evidently suspecting that some of its property was in the possession of the plaintiff, accompanied by a police officer, went to the shop of the plaintiff on the next morning, November 4, 1914, in search of it. They found there some barrels headed up, and upon their request these barrels were opened and found to contain a considerable quantity of brass which was identified as the property of the company. When asked from whom he had received this property, it was explained that his clerks had bought it from Samuel Frost and H. Coplan, and his books were produced indicating that on the previous day they had bought for him 116 pounds of this brass from Frost and 216 pounds thereof from H. Coplan, making a total of 332 pounds. The brass, however, which was then identified as the property of the company, which was weighed by the plaintiff, amounted to 445 pounds. No sufficient explanation of this discrepancy was then made or appears in the record. Frost was a canvasser of the plaintiff, appointed under the statute (tax bill, section 69 [Code 1904, page 2228]), which prohibits any person from canvassing for the purpose of buying junk or any other like commodity for a licensed junk dealer, or for sale to such junk dealer, or to any other person, unless authorized so to do in writing by some licensed junk dealer and appointed by him. The statute requires each junk dealer who desires to appoint such canvassers to take out a separate license for each canvasser.

After the plaintiff had given the names of the persons from whom he had received the property, they were sent

for. Frost, his canvasser, confirmed the statement of the plaintiff as to the property alleged to have been received from him, but said that he had bought it from a negro whom he could identify. He was promptly taken to the car barns of the company and certain employees were lined up before him, and he identified one of them as the person from whom he had received such property. This negro was promptly prosecuted and convicted of the larceny thereof. Coplan denied that he had sold the plaintiff any of the property referred to, though it clearly appears that he had the day before sold him, along with other junk, certain property described as 150 pounds red brass and sixty-six pounds yellow brass. Some of this identified property had the initials of the company upon it, and some had certain private marks which could be discerned, though concealed from common observation by grease.

Section 69 of the tax bill, referring to junk dealers, requires that at the time of each purchase of junk a record shall be kept, which shall be at all times open to the inspection of the judges of the criminal courts, the chief of police, the captains and sergeants of the police of the city, town, or county, wherein said business is being conducted, or any or either of them, the sergeant and sheriff of such city, town, or county, or other officer with police jurisdiction.

The plaintiff's counsel argues that because the plaintiff did not personally receive these stolen goods—this brass— which it is a felony to buy or receive, with intent to defraud, that therefore it should have been perfectly apparent to the defendant that he was innocent of any criminal intent; hence, that it is also clear from this and other circumstances that there was no probable cause for the prosecution, and that from this fact the malice of the defendant (which is another element essential to maintain the action) may be inferred. It must be remembered, however, that the statute, section 3715 of the Code, makes the possession of such

property which has been bought or received from any other person than the manufacturer thereof, or of his authorized agent, or of a regularly licensed dealer therein, *prima facie* evidence of such fraudulent intent. Then again, the evidence shows that the plaintiff had possession of goods recently stolen, and the only explanation which was then or thereafter made as to this possession was that it had been bought in the usual course of his business, part from a canvasser selected by him and duly licensed to canvass for junk for his (the plaintiff's) benefit, and part from Coplan, who, however, denied having sold any of the property which was identified and claimed by the defendant.

The defendant sent its witnesses to the Commonwealth's attorney to testify as to these transactions at the December term, but the Commonwealth's attorney at that time refused to send them before the grand jury, and later told them to come back at the next term, in January. The Commonwealth's attorney urged that the defendant should secure a warrant against the plaintiff and have the charge heard by a justice, his reason being that he thought that inasmuch as from these facts only a *prima facie* case was made out against the plaintiff, he ought to have a chance to explain his possession of the property, but upon the insistence of the company's attorneys, and because the judge of the court sustained them in their position that any citizen had the right to go before a grand jury to testify as to suspected crimes, an indictment was prepared charging the buying and receiving of railroad brass and metal with intent to defraud, under section 3715, to which the Commonwealth's attorney, added the count charging the larceny of the same goods. The witnesses were then sent before the grand jury, which found the indictment. Counsel for the plaintiff insist that malice is also shown because the company's counsel refused to institute a prosecution before a justice of the peace where the plaintiff, upon the hearing, might have made a

34

sufficient explanation, but we attach little consequence to
this circumstance, because the defendant, whether actuated
by malice or prudence, had the right to decline to take
the entire responsibility for instituting the prosecution
and, after disclosing the facts, to leave that responsibility
with the Commonwealth's attorney and the grand jury.
Then again, if the facts recited and shown by this record,
together with all of the explanation which the plaintiff has
made of the transaction indicating frankness and tending
to show innocence of any criminal intent, had been sub-
mitted to a justice of the peace upon a warrant charging
the crime or crimes referred to, it would still have been
the duty of the justice to send the case to the grand jury,
for these recited facts show a *prima facie* case, and this,
without any reference to the testimony offered by the de-
fendant company tending still further to implicate the plain-
tiff, because we are now considering this case as upon a
demurrer to the evidence, and are therefore confined to the
testimony of the plaintiff and his witnesses together with
such other testimony as is not in conflict therewith.

Probable cause is knowledge of such a state of facts and
circumstances as excite the belief in a reasonable mind, act-
ing on such facts and circumstances, that the plaintiff is
guilty of the crime of which he is suspected. Public policy
requires that persons justly suspected of crime should be
fairly prosecuted.

In *Faris* v. *Starke*, 3 B. Mon. (Ky.) 4, this is said: "If
every man who suffers by the perpetration of a crime were,
under the penalty of heavy damages, to ascertain before he
commences a prosecution, that he has such evidence as will
ensure a conviction, few prosecutions would be set on foot;
the guilty would escape while conclusive evidence was sought
for; offenses of every grade would, for the most part, go
unpunished, and the penal law would be scarcely more than
a dead letter. The law, therefore, protects the prosecutor,
if he have reasonable or probable ground for the prosecu-

tion, that is, if he have such ground as would induce a man of ordinary prudence and discretion to believe in the guilt and to expect the conviction of the person suspected, and if he acts in good faith on such belief and expectation."

Of course, it is reprehensible to institute criminal prosecutions lightly and thus to injure the character of honest men, but it should be constantly borne in mind that, in the interest of good order and society, those who have honest reason to believe that crimes have been committed and have knowledge of facts sufficient to justify such belief, ought not to be deterred from their public duty by the fear of having a jury assess damages against them if the accused should be acquitted. The courts, in the public interest, should maintain unimpaired the doctrine that the existence of probable cause is a complete defense to an action for malicious prosecution.

The uncontradicted facts in this case, as we understand them, clearly show the existence of probable cause, and a licensed junk dealer who receives recently stolen property, or who buys brass in violation of section 3715, may not escape just suspicion by merely showing, as the plaintiff here did, that he was frank, concealed no fact within his personal knowledge, and that he did not personally receive such goods. If he closes his eyes to the criminal or suspicious acts of his subordinates and employees, and accepts the benefit of such services to him, while he may, as in this case, upon his trial, secure an acquittal, he ought not to expect to escape prosecution.

Here, the evidence of the plaintiff and his witnesses, coupled with the uncontradicted testimony of defendant's witnesses, shows that there was probable cause for this prosecution; therefore, the court should have sustained the motion of the defendant to set aside the verdict and grant a new trial. The judgment will be reversed, and the case remanded for a new trial, if the plaintiff shall be so advised.

*Reversed.*