# Richmond

MARY BRODIE AND PHILIP BRODIE, ETC. V. HOWARD L. HUCK.

April 26, 1948.

Record No. 3308.

Present, Gregory, Eggleston, Spratley, Staples and Miller, JJ.

The opinion states the case.

*Jas. G. Martin & Sons* and *A. A. Bangel*, for the plaintiffs in error.

*Louis B. Fine* and *Leo P. Blair*, for the defendant in error.

GREGORY, J., delivered the opinion of the court.

The present writ of error brings before the court a malicious prosecution action brought on behalf of Howard L. Huck against Mary Brodie and Philip Brodie individually and as partners trading as Philip Brodie and Company, and I. E. Pines. The case was tried by a jury which found a verdict against the defendants for $1,000.

Philip Brodie and Company operate a furniture store in the city of Portsmouth, and sold a sofa bed to Howard L. Huck for $93.07. This transaction was evidenced by an installment conditional sales contract made on April 5, 1946, whereby the title to the sofa bed was retained in the seller until the balance of the purchase price had been paid in full. Of the $93.07, $30 was paid in cash at the time of the sale and the balance was agreed to be paid at the rate of $10 per month. None of the deferred payments was ever made though notice had been sent to the home of Huck for each and every installment which had become due,—some four or five in all.

The defendant, I. E. Pines, was the manager of the store. Huck resided at 324 Elliott avenue, in Portsmouth, and the sofa bed was delivered to that address. One of the express terms of the written contract is that the property shall not be removed from the place at which it is delivered.

The notices of the payments due were sent to the residence of Huck. The last letter which was returned to Philip Brodie and Company contained a pencil memorandum thereon to the effect that Huck had moved on May 10, 1946, and was probably living in Oregon. The intials "S. H." were signed to this memorandum, and the evidence discloses that it was made by the wife of Huck. This letter was postmarked June 11.

After the five letters had been sent to the residence of Huck and there had been no response, the last letter having been returned unopened with the notation above described made in the wife's handwriting, the manager of the store began an investigation. He discovered that the sofa bed had been removed from the home of Huck at 324 Elliott avenue to the residence of a Mr. Hayes. The removal had taken place in the night time, and Hayes informed the representative of Brodie and Company that he had bought the sofa bed from Mrs. Huck for $40 and had removed it from Huck's house to his own.

The defendant, Pines, on behalf of his employer, obtained a civil warrant in detinue to recover the possession of the sofa bed but before any action was taken thereon he discovered that Mrs. Huck was preparing to move to North Carolina and that Mr. Huck was to leave immediately. He then went to Mrs. Cherry, a justice of the peace, and laid the facts before her as he had understood them. She advised him to obtain a criminal warrant against Huck, which he did, and upon it Huck was arrested and held in jail for more than ten hours and then admitted to bail.

The evidence conclusively shows that the sofa bed had been sold illegally. However, at the trial of the criminal warrant Huck was acquitted of the criminal charge because it was not proven that he actually sold the sofa bed or aided in or consented to the sale made by his wife. The wife, when called as a witness in the present case claimed her privilege and refused to testify on the ground that she might incriminate herself, though she stated that she would testify if her husband was willing for her to tell what actually happened. He evidently was not willing because she did not testify.

There are several assignments of error but those that we will consider are, that there was probable cause for the issuance of the criminal warrant, and that there was an absence of malice.

Code, 1942 (Michie), sec. 4455 provides, among other things, that one who fraudulently sells, pledges, pawns, or

removes from the premises where it is agreed the property shall remain, and refuses to disclose the location thereof, or otherwise disposes of the property without the written consent of the owner lienor, or the person in whom the title is, shall be deemed guilty of larceny.

When the criminal warrant involved in this case was tried it was clear from the evidence that the sofa bed had been sold and removed from the premises of Huck but it was not shown that Huck made the sale or had any part in it. The evidence disclosed that the sale was made by Mrs. Huck. When this appeared at the trial the trial justice dismissed the warrant.

The fundamental question is whether Pines, the store manager, had probable cause for having the criminal warrant issued. This question was submitted to the jury and was resolved by the jury against the defendants. So, unless we are able to say as a matter of law that Pines had probable cause to have the warrant issued, the finding of the jury on this point would be final.

Prof. Burks, in his Pleading and Practice, Third Ed., at page 251, says that "no accurate definition can be given of probable cause, but belief in the charge on the facts based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence will suffice. The prosecutor must believe in the guilt of the accused and there must be reasonable grounds on which to base the belief. Both must concur."

And again, he says, on page 252, "what constitutes probable cause is a question for the court; but where there is any conflict in the evidence it is for the jury to determine whether in the particular case such probable cause existed." Several Virginia cases are cited in support of the text, among them, *Virginia Ry., etc., Co.* v. *Klaff*, 123 Va. 260, 96 S. E. 244.

In the last mentioned case the rule is stated thus: "It is fundamental that an action for malicious prosecution can not be maintained unless it appears that it was instituted without probable cause. The burden of proving that

there was no probable cause is upon the plaintiff, and if there is no conflict in the evidence the existence or non-existence of probable cause is a question of law for the court." (Citing several cases.)

In that case probable cause is described thus: "Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Public policy requires that persons justly suspected of crime should be fairly prosecuted."

In the course of the opinion, this further significant language is used: "Of course, it is reprehensible to institute criminal prosecution lightly and thus to injure the character of honest men, but it should be constantly borne in mind that, in the interest of good order and society, those who have honest reason to believe that crimes have been committed and have knowledge of facts sufficient to justify such belief, ought not to be deterred from their public duty by the fear of having a jury assess damages against them if the accused should be acquitted. The courts, in the public interest, should maintain unimpaired the doctrine that the existence of probable cause is a complete defense to an action for malicious prosecution."

In the instant case the evidence is overwhelming, and the testimony is uncontradicted that Pines did have probable cause for the issuance of the criminal warrant. He discovered the sale and the removal of the sofa bed. It was removed in the night time from Huck's residence where it was agreed that it should remain. Mrs. Huck collected $40 from Mr. Hayes who bought the sofa bed. Pines knew of the notation on the returned letter in the handwriting of Mrs. Huck conveying the information that Huck had moved to Oregon. Pines had obtained information that Mrs. Huck was leaving for North Carolina, and additional information that Huck was moving that night. These facts thoroughly justified Pines in the belief that Huck was either guilty of the sale or removal of the prop-

erty, or had a part in the sale, and afforded reasonable grounds on which to base that belief. There is no evidence of malice.

We conclude that probable cause for the prosecution existed as a matter of law; that there was no malice; and that the verdict should be set aside, the judgment reversed, and final judgment entered here in favor of the plaintiffs in error.

*Reversed and final judgment.*