# Richmond

## James O. Wiggs, Jr., v. Marian C. Farmer.

April 27, 1964.

Record No. 5720.

Present, All the Justices.

*Richard G. Brydges (Bruce G. Murphy; James R. McKenry: Brydges & Broyles,* on brief), for the plaintiff in error.

*L. Charles Burlage,* for the defendant in error.

Whittle, J., delivered the opinion of the court.

This action was instituted by Marian C. Farmer against James O. Wiggs, Jr., seeking both general and punitive damages as a result of the alleged malicious prosecution of Mrs. Farmer by Wiggs.

Prior to the commencement of the trial, counsel for Wiggs moved for summary judgment. He admitted the truth of all allegations in the motion, but contended that in view of § 4-3 of the Princess Anne County Code he, as a matter of law, had probable cause for procuring the warrant against Mrs. Farmer and was therefore entitled to summary judgment. This motion was overruled and exception noted.

At the conclusion of Mrs. Farmer's evidence and again at the conclusion of all the evidence counsel for Wiggs moved the court to strike on the ground that there was, as a matter of law, probable cause for Wiggs to act as he did in obtaining the warrant under § 4-3 of the Princess Anne County Code. Both motions were overruled and exceptions taken. Whereupon the jury returned its verdict for Mrs. Farmer, assessing $2,500.00 compensatory damages and $2,000.00 punitive damages.

Wiggs moved the court to set aside this verdict as being contrary to the law and the evidence. At a later date the court overruled this motion and defendant by counsel excepted. We granted Wiggs a writ of error.

While there are several errors stressed, the case turns upon the court's ruling on the question as to whether or not Wiggs, as a matter of law, had probable cause for procuring the warrant against Mrs. Farmer under the existing circumstances.

The record discloses that on September 10, 1961, at about 10:30 o'clock A.M., Jeanette Wiggs, the young daughter of the defendant, was severely bitten on the eye and on the ear by a dog belonging to Mrs. Farmer. The screaming child ran home with blood running from the wounds. Mrs. Wiggs immediately took her child to their family physician who informed her that the injuries to the child presented a case for plastic surgery, whereupon the child was carried to a hospital where her wounds were repaired.

James H. Duncan, dog warden, received a call relating to the dog bite and went to the scene. The warden's investigation revealed that the owner of the dog was the plaintiff, Mrs. Farmer. Duncan explained to Mrs. Farmer that the law required her dog to be confined for a period of fourteen days in quarantine on her premises.

Later that day Mrs. Farmer called the warden and requested that

she be permitted to move the dog to Quincy, Massachusetts. Duncan told Mrs Farmer that he did not have the authority to grant such a request and that the dog must remain in quarantine on her premises. The next day Mrs. Farmer sent the dog to a friend in Massachusetts. This was done without the knowledge of the warden or defendant Wiggs. Mrs. Farmer stated that she sent the dog to Massachusetts on permission obtained from Dr. William T. Garrett, the Director of Health for Princess Anne County. It is conceded that Garrett had no authority to give such permission.

For the next week Mrs. Farmer led Mr. and Mrs. Wiggs to believe that the dog was in quarantine on her premises. On September 17 the child continued to run a high temperature and Mrs. Wiggs called Mrs. Farmer to ascertain how the dog was progressing as she was naturally fearful that the dog might be rabid. Mrs. Farmer attempted to hedge in her answers to Mrs. Wiggs, but finally told her that she had shipped the dog out of the state on September 11.

Later, Wiggs, after consulting with the Commonwealth's attorney and others, swore out a warrant against Mrs. Farmer for violating § 4-3 of the Princess Anne County Code[1], at the trial of which Mrs. Farmer was acquitted.

Wiggs testified that he and his wife were miserable in not knowing the progress and condition of the dog and that he felt it was his duty as a citizen to obtain a warrant against Mrs. Farmer "as she had broken the law".

Actions for malicious prosecution are not generally favored in law, and they have been hedged about by limitations more stringent than those applied to almost any other suits for acts causing damages to others. Courts have allowed recovery only when the requirements limiting such actions have been fully complied with. Of course when the requirements have been met and the proper elements to support the action have been presented, the action will be readily upheld.

The disfavor with which the action is looked upon is especially apparent in cases where it is being brought for the institution of

[1] Any dog in the County which has bitten a person shall, by order of the game warden or other police officer be confined to the premises of its owner, keeper or custodian for such period as may be designated by such officer for not less than fourteen days nor more than forty-five days, and during such confinement, such dog shall not be permitted to come in contact with other dogs. Any person failing to comply with such order, after notice of the same, shall be punished as provided in Section 1-6 of this Code. (This section is similar to § 29-195 Code of Virginia 1950).

criminal proceedings against the plaintiff, since public policy favors the exposure of crime, which a recovery against a prosecutor would obviously tend to discourage. *Atkinson* v. *Birmingham*, 44 R.I. 123, 116 A. 205, 36 A.L.R. 366, 34 Am. Jur., Malicious Prosecution § 5, pp. 705, 706.

In order to maintain such an action it is necessary that it be alleged and provided: (1) that the prosecution was set on foot by the now defendant and that it had terminated in a manner not unfavorable to the now plaintiff; (2) that it was instituted, or procured by the cooperation of the now defendant; (3) that it was without probable cause, and (4) that it was malicious. Burks Pleading & Practice, 4th Ed. § 145, page 255.

"The action for malicious prosecution was designed for the benefit of the innocent and not of the guilty. It matters not whether there was probable cause for the prosecution, or how malicious may have been the motives of the prosecutor, if the accused is guilty he has no legal cause of complaint. His guilt therefore may always be shown notwithstanding his acquittal." Burks Pleading & Practice, 4th Ed. § 149, page 258. *Brodie* v. *Huck*, 187 Va. 485, 488, 47 S.E. 2d 310.

Malice and want of probable cause must concur. Either is insufficient without the other. *Freezer* v. *Miller*, 163 Va. 180, 176 S.E. 159, 182 S.E. 250. 54 C.J.S., Malicious Prosecution, § 19, page 974.

Malice may well be inferred from the want of probable cause. *Freezer* v. *Miller*, *supra*. But the latter will not be inferred from the former. The burden of proof of both is on the plaintiff, and although the want of probable cause is a negative, the burden is nevertheless on the plaintiff to prove it. This is said to be based on grounds of public policy. *Clinchfield Coal Corp.* v. *Redd*, 123 Va. 420, 96 S.E. 836; L.R.A. 1918A 872. Burks Pleading & Practice, 4th Ed. § 151, page 262.

■ At the time Wiggs procured the warrant against Mrs. Farmer he knew, and had every right to know, that she had violated § 4-3 of the Princess Anne County Code which, as a matter of law, was probable cause for the issuance of the warrant. The fact that Mrs. Farmer was acquitted of the charge in no way disturbs this result. 54 C.J.S., Malicious Prosecution, § 19, page 974, 34 Am. Jur., Malicious Prosecution, § 1703 et seq.

For the reasons stated the judgment of the lower court is reversed and final judgment is here entered for the defendant.

*Reversed and final judgment.*