# Richmond

GIANT OF VIRGINIA, INCORPORATED v. RAFFAELA D. PIGG.

RAFFAELA D. PIGG v. GIANT OF VIRGINIA, INCORPORATED.

January 16, 1967.

Record Nos. 6324, 6325.

Present, All the Justices.

*John W. Winston* (*Seawell, McCoy, Winston & Dalton*, on brief), for Giant of Virginia, Incorporated.

*Robert M. Harcourt* and *Joseph E. Baker* for Raffaela D. Pigg.

SPRATLEY, J., delivered the opinion of the court.

These two appeals involve an action for malicious prosecution, wherein the facts, despite conflicting evidence on several material points, are relatively simple. Resolving such conflicts as there are in favor of Mrs. Raffaela D. Pigg, the testimony, so far as it is material, is as follows:

On April 3, 1964, Raffaela D. Pigg, hereinafter referred to as plaintiff, her husband and children, residents of New York, were passing through Norfolk, Virginia, from Miami, Florida, to their home. They intended to visit Mrs. Pigg's sister, who lived at Ocean View in Norfolk. Prior to the visit they drove in their car, shortly before 5:00 p. m., to a store of Giant of Virginia, Incorporated (Giant), a self-service supermarket in Southern Shopping Center to purchase presents for the sister. Mrs. Pigg and one of her young sons entered the store and purchased four presents, which consisted of a tube of Colgate toothpaste, a container of Old Spice shaving lotion, and two cans of Alberto VO-5 hair spray, the total price of which was $4.27 according to a sales slip exhibited in evidence. As Mrs. Pigg went by the check-out counter, the above articles, after being paid for, were placed in a paper bag by the check-out cashier, and Mrs. Pigg placed the bag in her pocketbook. She returned to her car, showed her purchases to her husband, and then replaced them in her pocketbook. They then drove to her sister's home, and not finding her sister there, drove around town for a short time. Later they returned to the sister's home, but the sister was still absent.

One of plaintiff's children requested the purchase of some fruit. Mrs. Pigg and her family returned to the Giant store, and Mr. Pigg parked his automobile on the parking lot in front of the store. Mrs. Pigg and two of her children entered the store, between 6:00 and 7:00 p. m. She purchased some fruit, potatoes and onions. She then proceeded to the check-out lane, removed from her purse the items purchased on her first visit, placed them in front of the cashier, reached to the bottom of her pocketbook, took out her money purse, paid for the fruit, potatoes and onions, and left the store. When she reached

the outside, she was stopped by Oscar S. Phlegar, a detective employed by the owners of the store to observe anyone taking merchandise from the store without paying for it, to apprehend such an offender, and, if necessary, to institute prosecution.

Mrs. Pigg was of Italian extraction, and neither fluently spoke, nor understood, the English language very well. Phlegar admitted that he "couldn't understand her language." When she was apprehended by the officer, he asked her "what have you got in your bag?" She replied: "Nothing of yours I got. I got nothing." He then said: "You no pay. Let me look at what you got." She said: "Please, I don't have nothing of yours."

At Phlegar's invitation, she re-entered the store, and went to the office in the back part thereof. She opened her pocketbook and took out the paper bag therein, and handed it to Phlegar. He opened the bag, and found that it contained the four articles of merchandise which Mrs. Pigg purchased on her first visit to the store. There was no purchase slip in the bag, and Mrs. Pigg told Phlegar that the slip had been left by her in her automobile in the parking lot. Phlegar refused a request to go to the car, and charged her with stealing the four articles. He then called Lem Dall, the manager of the store, to the office. Mrs. Pigg said to the manager: "This is my stuff. I have paid before. You go ask my husband. My husband is in the car." She said the detective "no wanted to listen to me," and said "No, no. You cannot go. Don't let her go. She steal. She steal." Dall said that he did not see her take anything, and did not know where the articles came from. He could not remember her exact words; but he thought she offered to pay for the articles, but this "was up to the security officer."

Phlegar called the police department, and the police came to the store about 7:00 p. m. One of the officers said he talked to Phlegar; that the latter charged Mrs. Pigg with petit larceny; and Mrs. Pigg protested, saying "Me no steal." She appealed to the store manager, and according to her, the latter said: " 'I no say nothing. I no say you steal. The older man (Phlegar) the police say you steal.' " Mrs. Pigg denied that she ever offered to pay for the merchandise. Both Phlegar and the store manager still refused to go to the car in the parking lot, and consult her husband to determine the truth of her statements as to the possession of the sales slip.

Mrs. Pigg was placed under arrest, escorted to a nearby police precinct, and Phlegar swore out a warrant charging her with petit lar-

ceny. She was then transferred to police headquarters, photograped, fingerprinted, and placed in a cell. No one from the store, in the meantime, went to the automobile to consult Mr. Pigg, or advise him that his wife was being detained at the police headquarters. He subsequently learned of her arrest from two police officers. Mrs. Pigg was released at approximately 10:00 p. m. o'clock that night, after giving a bond for her appearance at the trial.

Raffael W. Pigg, the ten-year old son of Mrs. Pigg, said he went with his mother to the store on her first visit, and saw her purchase and pay for the four articles alleged to have been stolen. On the second visit to the store, one of her children left when she was accosted by Phlegar. The other went with her to the office of the store, and then returned to the car in the parking lot.

Mr. James W. Pigg, the husband of Mrs. Pigg, testified that his wife purchased the hair spray, the toothpaste and box of Old Spice lotion as presents for his sister-in-law and brother-in-law upon Mrs. Pigg's first visit to the store. He produced the cash register sales slip for the purchase of the articles mentioned.

Phlegar testified that he did not know Mrs. Pigg, and that he had never seen her before her second visit to the store; that he did not see her come into the store, but observed her when she was passing by the drug aisle; that she had a large black pocketbook; that when she passed the drug counter, she picked up a tube of toothpaste and put it in a paper bag; that she put the bag in the basket or store cart where she had some onions and oranges; that when she got to the check-out counter, she put her groceries on the counter, and later put the groceries and the toothpaste she had in the paper bag in her pocketbook; that she passed through the check-out counter without paying for the toothpaste, and he then caught up with her, got her to open her pocketbook, found the toothpaste, but no sales slip showing that it had been paid for; that she said something he did not understand, and then offered to pay for the four articles here involved; that at her request to see the manager of the store, the manager was called; and that after some discussion among the three, the manager told him to call the police.

Mrs. Pigg was tried on a charge of petit larceny in Municipal Court, Part I (otherwise known as Police Court of the City of Norfolk) on April 4, 1964, and was promptly acquitted. She paid $50.00 to an attorney to represent her in the Municipal Court, $10.00 for hotel expenses, and the expense of obtaining the bail bond.

On January 13, 1965, Mrs. Pigg filed a motion for judgment against Giant of Virginia, Incorporated, asking for both compensatory and punitive damages resulting from an alleged malicious prosecution.

Giant answered, denying generally the allegations of the motion. It admitted, however, "that it caused a criminal warrant to be sworn out against plaintiff on April 4, 1964." It filed pleas of probable cause and privilege.

The case was heard before a jury on June 4, 1965, and resulted in a verdict in favor of plaintiff, Mrs. Pigg, in the amount of $5,000.00 compensatory damages and $50,000.00 punitive damages. After hearing argument on Giant's motion to set aside the verdict, the trial court sustained the verdict as to compensatory damages, and set it aside as to punitive damages. Thereafter, judgment was entered in accordance therewith.

Giant excepted to the judgment on the grounds that it was contrary to the law and the evidence, without evidence to support it as to either compensatory or punitive damages, and the verdict was excessive. Mrs. Pigg excepted on the ground that the court erred in setting aside that portion of the verdict which awarded her punitive damages.

We granted Giant a writ of error, Record No. 6324. On the same day, we granted Mrs. Pigg a writ of error, Record No. 6325. The two writs of error came on to be heard by us, at the same time and on the single record made in the trial court.

The assignments of error in the two appeals raise the following basic and controlling questions:

I. Is the award for compensatory damages supported by the law and the evidence?

II. Is the award for punitive damages supported by the law and the evidence?

This case is founded on a charge of criminal prosecution with malice and without probable cause. The burden was on the plaintiff to prove: (1) that the prosecution was set on foot by Giant, and that it had terminated in a manner not unfavorable to her; (2) that the prosecution was without probable cause; and (3) that the prosecution was malicious. *Wiggs* v. *Farmer*, 205 Va. 149, 152, 135 S. E. 2d 829.

The uncontradicted evidence shows that Phlegar was an employee and agent of Giant, and that his actions arose out of and in the course of his employment; that Mrs. Pigg told Phlegar that she had a sales slip for the merchandise she was accused of stealing; that the slip was

in her car outside the store where it could be seen; that Phlegar refused to go to her car and look at the slip; that Mrs. Pigg repeatedly said that she did not steal anything; and that upon her trial in the police court, she was acquitted of the charge against her. Thus, there was left only the questions of probable cause and malice for determination by the jury.

Various definitions of "probable cause" have been given in many cases. *Freezer* v. *Miller*, 163 Va. 180, 202, 176 S. E. 159. In Virginia, it has been briefly defined thus: "Probable cause is knowledge of such a state of facts and circumstances as to excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Va. R. & P. Co.* v. *Klaff*, 123 Va. 260, 266, 96 S. E. 244; *Spitzer* v. *Clatterbuck*, 202 Va. 1001, 1005, 121 S. E. 2d 466. The prosecutor must take cognizance of facts known to him, and of information received by him, if he is a prudent man. Where there is a conflict of evidence as to probable cause, "[I]t is for the jury to determine whether in the particular case such probable cause existed." *Clinchfield Coal Corporation* v. *Redd*, 123 Va. 420, 443, 96 S. E. 836; *Va. R. & P. Co.* v. *Klaff, supra*, 123 Va. at page 262.

Giant contends that: " 'Probable cause' is present where the prosecutor forms a definite opinion or belief that plaintiff, (Mrs. Pigg) was guilty of a crime and, acting upon that opinion or belief, he has the plaintiff prosecuted." This theory finds little support in law or reason. The opinion or belief of the prosecutor is not the test of probable cause. The test is whether the facts and circumstances known, or made known, to the prosecutor are sufficient to justify a prudent and reasonable man in the belief that an accused is guilty of the crime charged. The suggested theory would make the prosecutor the arbiter as to probable cause. It disregards entirely the evidence in this case showing the opportunity of the prosecutor to obtain information which should have changed any prior opinion or belief he had. It is obvious from the verdict that the jury acepted the testimony of Mrs. Pigg. All of the evidence available to the jury was available to Phlegar, if he had acted as a prudent man.

In the *Clinchfield Coal Corporation* case, *supra*, 123 Va., we said this at page 438:

" * * * We fully recognize and would not detract in the least from the influence of the salutary principle that the law favors prosecution for crime. * * * But this principle and policy of the law does not go to

the extent of inviting the prosecution of citizens who are keeping within their rights merely because some other citizen may have an impression that there is reason to institute a prosecution. * * *."

Malice, that is legal malice, may be inferred from the want of probable cause; but the latter will not be inferred from the former. The burden of proof is on the plaintiff in each matter. *Wiggs* v. *Farmer, supra,* 205 Va., at page 152.

The existence of malice "is always a question for the jury under all the circumstances of the case. The circumstances must warrant the inference * * *." *Clinchfield Coal Corporation* v. *Redd, supra,* 123 Va., at pages 443, 444; *Freezer* v. *Miller, supra,* 163 Va., at page 208.

Compensatory damages are those allowed as a recompense for loss or injury actually received and include loss occurring to property, necessary expenses, insult, pain, mental suffering, injury to the reputation, and the like. *Zedd* v. *Jenkins,* 194 Va. 704, 707, 74 S. E. 2d 791; *Wright* v. *Everett,* 197 Va. 608, 614, 90 S. E. 2d 855.

The evidence is quite clear that Mrs. Pigg had a sales receipt for the merchandise alleged to have been stolen by her; that Phlegar was so informed; and that he refused to examine the receipt which would have exonerated her. In spite of her continued avowals of innocence and requests that Phlegar look at this evidence, he had her arrested and imprisoned as a common thief. It can hardly be claimed that, under the circumstances, Phlegar acted as a prudent and reasonable man. His disregard of information communicated to him constituted an aggravated circumstance which supports the finding of the jury that there was such a want of probable cause as warranted an inference of legal malice. We agree with the trial court that the evidence was sufficient to support the award for compensatory damages.

"(I)n actions of this nature the jury is regarded as the best and safest tribunal to determine the measure of damages." *Weatherford* v. *Birchett,* 158 Va. 741, 748, 164 S. E. 535; *Spitzer* v. *Clatterbuck, supra,* 202 Va., at page 1007. There is no evidence that the jury was activated by passion or prejudice.

Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others. They are allowed not so much as compensation for plaintiff's loss, as to warn others and to punish the wrongdoer, if he has acted wantonly, op-

pressively, or with such malice as to evince a spirit of malice or criminal indifference to civil obligations. Wilful or wanton conduct imports knowledge and consciousness that injury will result from the act done. *Wood* v. *American National Bank,* 100 Va. 306, 40 S. E. 931; *Weatherford* v. *Birchett, supra,* 158 Va. at 747; *Friedman* v. *Jordan,* 166 Va. 65, 68, 184 S. E. 186; *Zedd* v. *Jenkins, supra,* 194 Va. at 707; *Wright* v. *Everett, supra,* 197 Va. at 615; *Baker* v. *Marcus,* 201 Va. 905, 909, 114 S. E. 2d 617. Cf. *United Construction Workers* v. *Laburnum Construction Corporation,* 194 Va. 872, 894, 895, 75 S. E. 2d 694.

Where punitive damages are asked there must be proof of actual or express malice. *Cook* v. *Patterson Drug Company,* 185 Va. 516, 522, 39 S. E. 2d 304. Cf. *Windsor* v. *Carlton,* 136 Va. 652, 656, 118 S. E. 222. Actual malice is an essential and controlling factor for the recovery of punitive damages. Evil intent cannot be presumed or inferred from mere mistake.

The general rule is well stated in 54 C. J. S., Malicious Prosecution, § 84, pages 1056, 1057:

"In order to authorize the recovery of compensatory damages, it is necessary only that plaintiff should prove legal malice. On the other hand, in order to recover exemplary or punitive damages, he must show that defendant acted with actual malice, in the sense of personal ill will, or under circumstances of insult, rudeness, or oppression, or in a manner showing reckless and wanton disregard of plaintiff's rights. Also actual malice must be shown by evidence especially addressed to this question; it cannot be inferred from a showing of want of probable cause."

There is no evidence that Phlegar or Dall acted with actual malice, or with evil purpose, or a spirit of mischief, in causing the arrest of Mrs. Pigg. They did not know her, and there is no showing of personal animosity, ill will, rudeness, or oppression, and actual malice cannot be inferred from a showing of want of probable cause. Here the jury inferred, as it had a right to do, that lack of probable cause and the circumstances, including the refusal of Phlegar to go to her car and examine her sales slip showing a prior purchase of the merchandise involved, constituted legal malice. But the fact that Phlegar was not performing his duty in a reasonable way cannot be blown up to show that he was guilty of actual malice. Consequently, the evidence does not warrant the award for punitive damages.

In view of our conclusions and reasons therefor, we deem it un-

necessary to discuss other assignments of error made by each of the parties. The case turns, as we have said, upon the questions whether Phlegar had probable cause for instituting the prosecution of Mrs. Pigg, and whether, under the circumstances, he was guilty of either legal malice or actual malice.

We hold that the trial judge did not err in sustaining the verdict as to compensatory damages, and in setting it aside as to punitive damages.

Accordingly, the judgment of the trial court is affirmed.

*Affirmed.*