Charles L. KEATON,
and
Polly Ann Keaton, Plaintiffs,
v.
R. H. BALSER
and
Ernest Beels, Defendants.
Civ. A. No. 71-C-79-R.

United States District Court,
W. D. Virginia,
Roanoke Division.

March 21, 1972.

William Sanders, Princeton, W. Va., and Ronald M. Ayers, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for plaintiffs.

Frank N. Perkinson, Jr., John C. Towler, Roanoke, Va., for defendant Balser.

Carroll D. Rea, Hazlegrove, Carr, Dickinson, Smith & Rea, Roanoke, Va., for defendant Beels.

## OPINION and JUDGMENT

DALTON, District Judge.

This action involves a suit by Charles L. Keaton and his wife, Polly Ann Keaton, both citizens of the State of West Virginia, against two citizens of the State of Virginia, R. H. Balser, a member of the Covington Police Force, and Ernest Beels. The complaint seeks damages from the defendants for malicious prosecution and false arrest. Jurisdiction is founded on diversity of citizenship pursuant to the provisions of 28 U. S.C.A. § 1332.

At approximately 3:15 a. m. on April 6, 1971, Charles L. Keaton, a locomotive engineer for the Chesapeake & Ohio Railway, was operating an engine which was pushing boxcars onto a siding located on or adjacent to property owned by defendant Beels, the owner and operator of a local trucking concern. While conducting this operation one of the boxcars collided with three of Beel's trucks. Immediately following the accident, the conductor of the train informed Keaton of the collision. In accordance with standard company procedure, the conductor thereafter radioed the C&O yardmaster and reported the accident. The yardmaster instructed the train crew to uncouple the boxcar as it was and to fill out a C&O accident report when they arrived at the yard office. These instructions were followed and no attempt was made to contact anyone at the scene of the accident or the Covington Police Force. After filing the C&O report and completing his normal duties, Keaton retired to a dormitory car on the C&O property.

At approximately 7:00 a. m., Mr. Beels, the owner of the trucks, arrived at his company's premises and discovered the damaged trucks. Sergeant Balser was already at the accident scene making his investigation for the purposes of completing a standard accident report. Mr. Beels thereafter telephoned a representative of the Railroad at the C&O yard office. Two C&O representatives met with Mr. Beels at approximately 8:00 a. m. and discussed the accident. The representatives and Mr. Beels discussed the damage, but apparently there was some disagreement with the railroad. The C&O representatives departed leaving Mr. Beels with an apparent belief that they would telephone him right away which Mr. Keaton contends they did not do. Around ten o'clock that morning Sergeant Balser went to Mr. Beels office and they discussed the accident. Mr. Beels inquired as to whether the locomotive engineer was guilty of leaving the scene of the accident. Sergeant Balser, assuming that he was guilty of that crime, instructed Mr. Beels that he could get a warrant served on the engineer; however, at this time it does not appear that they knew the name of the engineer.

Subsequently Sergeant Balser secured the name of the engineer, Mr. Keaton, and a warrant was issued against him for leaving the scene of the accident. There is some discrepancy in the evidence as to exactly how the warrant was procured; however, it seems clear to this court that Mr. Beels only intended to summons Mr. Keaton on the charge rather than have him arrested.

Following the issuance of the warrant, Sergeant Balser, accompanied by Patrolman Whitt, went to the C&O dormitory car and awakened Mr. Keaton. Sergeant Balser thereafter served the warrant on Mr. Keaton and then asked to see his driver's license. Mr. Keaton objected, stating that he didn't think his driver's license would have any bearing on the case because he was operating a train at the time of the accident. After his second refusal to produce his driver's license, which Sergeant Balser needed in order to complete a traffic summons, Mr. Keaton was taken into custody and taken to jail where Sergeant Balser procured another warrant charging Mr. Keaton with disorderly conduct. Mr. Keaton remained in jail for approxi-

mately five hours until he was released on bail.

On the day of Mr. Keaton's scheduled trial, the Commonwealth's Attorney *nolle prossed* both warrants against Mr. Keaton.

The plaintiffs and both defendants have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In their complaint the plaintiffs have set forth claims for various types of damages. C. L. Keaton has asked for $25,000 in compensatory damages and $25,000 in punitive damages for being "subjected to great indignity and humiliation, pain and distress of mind and body" and for being "prevented from attending to his usual business, occupation, normal pursuits, pleasures or relaxation" and for being "subjected to medical attendance and treatment" and for being "injured in his good name and reputation in the community." Polly Ann Keaton has asked for $25,000 in compensatory damages and $25,000 in punitive damages as a result of suffering "the loss of normal society, comfort and consortium of her said husband."

■■ Before reaching the merits of this action, this court will note that actions for malicious prosecution are not favored and courts will allow recovery only when the requirements for such have been complied with. Janney v. Arlan's Department Store, 247 F.Supp. 306, 308 (W.D.Va.1965); Wiggs v. Farmer, 205 Va. 149, 151, 135 S.E.2d 829, 831 (1964). While one should be careful not to institute criminal prosecution lightly so as to injure the character of honest men, it should be borne in mind that, in the interest of good order and society, those who have honest reason to believe that crimes have been committed and who have knowledge of facts sufficient to justify such belief, ought not to be deterred from their public duty by the fear of having damages assessed against them if the accused should be acquitted. Brodie v. Huck, 187 Va. 485, 487, 47 S.E.2d 310, 312 (1948).

■ The charge of malicious prosecution is most difficult to prove; for, in order to recover the plaintiff must establish the following elements: (1) institution of judicial proceedings by or at the instance of the defendant; (2) the termination of such proceeding in the plaintiff's favor; (3) actual malice on the part of the defendant in instituting the proceeding; and (4) a lack of probable cause for institution of the proceedings. Janney v. Arlan's Department Store, supra 247 F.Supp. at 307; Wiggs v. Farmer, supra, 205 Va. at 152, 135 S. E.2d at 831; Restatement, Torts § 653 (1938).

It appears to this court that the first essential element has been proved by the plaintiffs. While there may be some doubt as to which of the defendants initiated the prosecution, it appears to this court that it was actually a concert of action by both defendants. Since the Commonwealth Attorney *nolle prossed* the warrant for leaving the scene of the accident on which the malicious prosecution claim in this action is based, it is apparent that the second element requiring termination in the plaintiff's favor has also been established. However, it is the next two elements on which the merits of the case rest. The existence or nonexistence of probable cause and actual malice will determine the outcome of this litigation.

■■ Malice and want of probable cause must concur—either is insufficient without the other. Freezer v. Miller, 163 Va. 180, 176 S.E. 159 (1934). In order to put this case in proper perspective, it should be kept in mind that the defendants in procuring the warrant for leaving the scene of the accident acted under the mistaken belief that the Virginia law establishing this crime would subject a locomotive engineer to the same duty as a motor vehicle operator. In fact, this is not true since Section 46.1–1(34) of the Virginia Code exempts "devices . . . used exclusively upon stationary rails or tracks" from the definition of "vehicle." Conse-

quently, Section 46.1–176(c) of the Code, which is the statute covering the crime of leaving the scene of the accident, does not apply to locomotives.

■ In the case of Clinchfield Coal Corp. v. Redd, 123 Va. 420, 96 S.E. 836 (1918), the Virginia Court of Appeals stated that there may be circumstances under which a mistaken belief in a legal proposition, like a mistaken belief in the existence of facts, would afford ground for a prosecutor to claim probable cause as a defense in a malicious prosecution action; but such belief must be positive and definite and positive since a confessedly doubtful state of mind will not suffice, either as to the law or to the facts. This court is of the opinion that the defendants in the case at bar did have a positive and definite belief that the engineer of the train was subject to prosecution for leaving the scene of an accident. Defendant Beels, as operator of a trucking concern, knew that if his drivers hit another vehicle or a train that they were subject to prosecution for not remaining at the scene of the accident. While it might be argued that Sergeant Balser should have had a better knowledge of the laws with which he had a duty to enforce, it appears to this court that he too had a definite and positive belief that the engineer was covered by the statute.

■ Even though the defendants were mistaken as to the law, this court feels that the necessary probable cause was present. Probable cause is knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected. Clinchfield Coal Corp. v. Redd, supra, 123 Va. at 440, 96 S.E. at 842; Virginia Railway & Power Co. v. Klaff, 123 Va. 260, 266, 96 S.E. 244, 246 (1918). In the case at bar there is no doubt that the plaintiff, Keaton, was the engineer of the train which in fact did leave the scene of the accident. This court feels that this fact and the existing mistaken belief that the act constituted a crime were facts from which a reasonable man would conclude that a traffic violation had been committed.

■ Not only is it the opinion of this court that the defendants acted with probable cause, but also that there was no actual malice. The malice which is an essential element of an action for malicious prosecution is actual malice, or malice in fact, as distinguished from imputed malice, that is, malice imputed by law. It must exist in fact, and its existence must be proven as any other fact. It may be established by an inference drawn from the facts and cricumstances proved, where they warrant such an inference, but it is never presumed or imputed by law. Freezer v. Miller, supra, 163 Va. at 203, 176 S.E. at 168. Malice as used in relation to a cause of action for a malicious criminal prosecution is any controlling motive other than a *bona fide* desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished, or the lack of a *bona fide* desire, controlling in its influence, to accomplish those purposes. Freezer v. Miller, supra, 163 Va. at 206, 176 S.E. at 169.

The plaintiffs base their allegation of malice on the theory that defendant Beels brought the action against Mr. Keaton as a retaliation for the railroad's apparent lack of concern for his damages. Specifically, they contend that because the two railroad representatives did not promptly follow up their visit to Mr. Beels on the morning of the accident, Mr. Beels became angry and upset and in revenge to this treatment decided to prosecute the engineer. Furthermore, the plaintiffs contend that Mr. Beels acted wantonly because he did not, as a reasonable businessman, consult his attorney before procuring the warrant. Mr. Beels' own testimony indicates that one of his reasons was to get the engine reported so that he could obtain a lien against the C&O for his damages.

■ While it is true that Mr. Beels did have other reasons for instituting this prosecution, this court finds that they were incidental and that the defendants' controlling motive was proper. At 10:00 a. m., less than two hours after the railroad representatives had conferred with Mr. Beels, he asked Sergeant Balser if the engineer was guilty of leaving the scene of the accident, and Sergeant Balser answered affirmatively. This reliance on Sergeant Balser, a law enforcement officer, tends to disprove malice but is not an absolute defense as is reliance on competent advice of counsel. Barton v. Camden, 147 Va. 263, 274–275, 137 S.E. 465, 468 (1927). Furthermore, the defendants did not know who the engineer was at this time, which seems to indicate that his concern was that an accident had occurred involving his trucks and that because the train had left the scene of the accident no investigation had been promptly made. Also the fact that he did not desire the arrest of the engineer, but only a summons, indicates to this court that there was no actual malice toward the plaintiff. The acts which occurred subsequently which led to the plaintiff's arrest and incarceration, stemmed from an incident between the plaintiff and Sergeant Balser.

■ Since the evidence reveals that the defendant Beels did not desire the arrest of the plaintiff on the warrant charging leaving the scene of the accident, this court will treat Sergeant Balser as the only defendant in the false arrest charge in the complaint. This charge relates only to the charge of disorderly conduct. This court is of the opinion that Sergeant Balser's arrest of the plaintiff on the disorderly conduct charge was proper and that summary judgment on this issue should be granted in his favor.

■ It should be noted that this court in entering summary judgment for the defendants on all issues, finds against Polly Ann Keaton only on the ground that her rights, if any, were dependent on the success of her husband. Since summary judgment has been granted against him, his wife clearly has no claim. This note is added in order to clarify that the court found it unnecessary to decide whether or not Mrs. Keaton stated a cause of action upon which relief could be granted.