**Devada Ann BURWELL, Plaintiff,**

v.

**VIRGINIA ACME MARKETS, INC.,
a corporation, Defendant.**

**Civ. A. No. 1323.**

United States District Court,
S. D. West Virginia,
Bluefield Division.

March 14, 1973.

W. O. Bivens, Jr., Philip T. Lilly, Jr., James C. Cain, Bluefield, W. Va., for plaintiff.

Norris Kantor, Katz, Katz & Kantor, Bluefield, W. Va., for defendant.

## MEMORANDUM DECISION AND ORDER

CHRISTIE, Chief Judge.

Plaintiff, Devada Ann Burwell, a West Virginia resident, brings this action wherein she demands judgment against the defendant, Virginia Acme Markets, Inc., a Virginia corporation, for compensatory and punitive damages allegedly resulting from an action of malicious prosecution. Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the defendant has moved the Court to enter summary judgment in its favor on the ground that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

The pertinent facts involved in the present dispute appear to be as follows:

On separate occasions from June 5, 1971, through June 16, 1971, five checks, payable to Ann Burwell, totalling $230, were endorsed and cashed by her at the Virginia Acme Market in the Westgate Shopping Center, Bluefield, Virginia. All the checks were signed by Duke Burwell and were on the account of Duke's Rod & Custom Body Shop, 1300 Princeton Avenue, Bluefield, West Virginia, at the Mercer County Bank, Princeton, West Virginia. All the checks were returned to the Virginia Acme Market because of insufficient funds in the account or because the account had been closed. Devada Ann Burwell and Duke Burwell were husband and wife at the time of the uttering of each of the aforementioned checks, but were apparently separated. Shortly thereafter they were divorced.

On August 23, 1971, a letter was sent by certified mail to Ann Burwell, 1300 Princeton Avenue, Bluefield, West Virginia, by the Virginia Acme Markets, advising her that the checks had been returned by the bank and that payment would be expected within five days. No payment was made of any of the checks, and on August 31, 1971, five warrants were issued on the complaint of Virginia Acme Market for Ann Burwell by a Justice of the Peace in Tazewell County, Virginia. Subsequent thereto, a fugitive warrant was issued by a Justice of the Peace in Mercer County, West Virginia, charging Ann Burwell with being a fugitive from justice from the Commonwealth of Virginia and charging her with fleeing from that jurisdiction to the State of West Virginia to avoid prosecution in Virginia. She was arrested, waived extradition, and transported

from West Virginia to Tazewell, Virginia, and released on bond. On September 30, 1971, she "made good" all five checks by paying to the Virginia Acme Market the sum of $230 and charges against her were dismissed on October 26, 1971.

■ Jurisdiction of the Court in this matter is based upon diversity of citizenship and an amount in controversy exceeding $10,000. 28 U.S.C.A. § 1332. We are therefore bound to apply the laws of the forum state. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), including its prevailing choice of law rule. Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). As a federal court exercising diversity jurisdiction, we are not afforded the luxury of fashioning a rule we deem most appropriate. Nevertheless, our review of the West Virginia law has failed to uncover a case which is directly in point with the one before us, thus, we are left with the arduous task of determining the rule which the West Virginia Supreme Court would follow were it to consider the matter.

■ In regard to tort claims in general, it has long been established by the West Virginia courts that when a cause put in motion in one jurisdiction results in injury in another, the law of the jurisdiction where the injury occurred controls the substantive rights of the parties. However, these cases have generally dealt with such matters as vehicle accidents, manufacturer's liability, and use of explosives.[1] In each instance, it was clear in which jurisdiction the injury occurred. Such is not the case here and we have been unable to find an analogous situation in the West Virginia law.

Plaintiff asserts numerous injuries as a result of her prosecution—mental anguish, humiliation, embarrassment, physical sickness, doubt cast upon her honesty and integrity, and loss of the custody of her children. The action allegedly giving rise to these purported injuries was initiated in Virginia, however, her arrest apparently occurred in West Virginia. She was then transported back to Virginia and released on bond. The case against her was eventually dismissed by a Virginia judge. In such a sequel of events, it is exceedingly difficult, if not impossible, to pinpoint the jurisdiction in which the alleged injuries arose. Indeed, injury may well have occurred in both neighboring states, particularly in relation to plaintiff's reputation.

■ Accordingly, although we recognize our obligation to follow West Virginia choice of law rules, what action the West Virginia court would take in this particular instance is not altogether clear. Therefore, since we have few guides to follow, we believe we should avoid a rigid rule and instead determine which state has the "most significant relationship" with the events constituting the alleged tort. This approach was utilized by the Fourth Circuit in determining the applicable state law in Lowe's North Wilkesboro Hardware, Inc. v. Fidelity Mutual Life Insurance Company, 319 F.2d 469 (4th Cir. 1963). Most of the events and at least some of the inju-

1. Dodrill v. Young, 143 W.Va. 429, 102 S.E.2d 724 (1958), automobile collision in Virginia, Virginia law held applicable; see also Wood v. Shrewsbury, 117 W.Va. 569, 186 S.E. 294 (1936); Schade v. Smith, 117 W.Va. 703, 188 S.E. 114 (1936); and Clise v. Prunty, 108 W.Va. 635, 152 S.E. 201 (1930). Dallas v. Whitney, 118 W.Va. 106, 188 S.E. 766 (1936), blasting in West Virginia caused damage in Ohio, Ohio law held applicable. Hodge v. Sands Manufacturing Company, 151 W.Va. 133, 150 S.E.2d 793 (1966), property damage resulting from explosion in West Virginia of a defective water heater manufactured in Ohio, West Virginia law held applicable. Saena v. Zenith Optical Co., 135 W.Va. 795, 65 S.E.2d 205 (1951), injuries sustained in Illinois from defective coffeepot manufactured in West Virginia, Illinois law applied. Tice v. E. I. Du Pont De Nemours & Co., 144 W.Va. 24, 106 S.E.2d 107 (1958), West Virginia resident injured on job in Ohio, Ohio law applied.

ries pertinent to the current litigation occurred in the Commonwealth of Virginia. Virginia unquestionably has a natural interest in determining the extent its legal processes may be inhibited by the possibility that a person making use of these processes will be held liable for malicious prosecution. See Restatement, Second, Conflict of Laws, Sec. 155. Therefore, we conclude that the West Virginia Supreme Court would probably determine that Virginia law would be applicable in this case.

■ The Virginia court has long held that in order for a plaintiff to recover damages in an action for malicious prosecution, the burden is upon him to allege and prove that the prosecution was instituted by the defendant without probable cause; that the prosecution was malicious; and that it terminated in a manner not unfavorable to the plaintiff. Gaut v. Pyles, 212 Va. 39, 181 S.E.2d 645 (1971); Giant of Virginia, Incorporated v. Pigg, 207 Va. 679, 152 S.E.2d 271 (1967); Wiggs v. Farmer, 205 Va. 149, 135 S.E.2d 829 (1964). Since the prosecution complained of in this case appears to have terminated in a manner not unfavorable to the plaintiff, we divert our attention to the remaining issues of probable cause and malice.

■ Probable cause has been defined as a knowledge of such a state of facts and circumstances as would excite the belief in a reasonable mind, acting on such facts and circumstances, that the accused is guilty of the crime of which he is suspected. Gaut v. Pyles, supra; Virginia Ry. & Power Co. v. Klaff, 123 Va. 260, 96 S.E. 244 (1918). Malice, as used in relation to a cause of action for a malicious criminal prosecution, is any *controlling motive* other than a bona fide desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished, or the lack of a bona fide desire, *controlling* in its influence, to accomplish. these purposes. Freezer v. Miller, 163 Va. 180, 176 S.E. 159, 182 S.E. 250. Malice, that is legal malice, may be inferred from the want

of probable cause, but the latter will not be inferred from the former. The burden of proof is on the plaintiff in each matter. Giant of Virginia, Incorporated v. Pigg, supra; Wiggs v. Farmer, supra.

Defendant contends that since the "bad checks" uttered by plaintiff were prima facie evidence of intent to defraud, and that since plaintiff was given the proper notice required by Virginia law before criminal prosecution was instituted against her, there existed a state of facts and circumstances constituting probable cause to bring the action.

In regard to this matter, Section 6.1–115 of the Code of Virginia, 1950, provides in pertinent part:

"Any person who, with intent to defraud, shall make or draw or utter or deliver any check, . . . for the payment of money, upon any bank . . . knowing, at the time of such making, drawing, uttering, or delivering . . . that the maker or drawer has not sufficient funds . . . with, such bank . . ., although no express representation is made in reference thereto, shall be guilty of larceny."

Section 6.1–117 states:

". . . the making or drawing or uttering or delivery of a check, . . . payment of which is refused by the drawee because of lack of funds or credit shall be prima facie evidence of intent to defraud or of knowledge of insufficient funds in, credit with, such bank . . . unless such maker or drawer, or someone for him, shall have paid the holder thereof the amount due thereon, together with interest, and protest fees (if any), within five days after receiving written notice that such check . . . has not been paid to the holder thereof. Notice mailed by certified or registered mail, evidenced by return receipt, to the last known address of the maker or drawer shall be deemed sufficient and equivalent to notice having been received by the maker or drawer.

"If such check . . . shows on its face a printed or written address, home, office, or otherwise, of the maker or drawer, then the foregoing notice when sent by certified or registered mail to such address, with or without return receipt requested, shall be deemed sufficient and equivalent to notice having been received by the maker or drawer, whether such notice shall be returned undelivered or not.

"When a check is drawn on a bank in which the maker or drawer has no account, it shall be presumed that such check was issued with intent to defraud, and the five-day notice set forth above shall not be required in such case."

Furthermore, Section 6.1–118 of the Code of Virginia, 1950, provides in part:

"In any civil action growing out of an arrest under Section 6.1–115 . . . for failure or refusal to pay such instrument, the one who arrested or caused such person to be arrested and prosecuted, or either, shall be conclusively deemed to have acted with reasonable or probable cause in any suit for damages that may be brought by the person who drew or uttered such instrument, if the one who arrested or caused such person to be arrested and prosecuted, or either, shall have, before doing so, presented or caused such instrument to be presented to the depository on which it was drawn where it was refused, and then waited five days after notice, as provided in § 6.1–117, without the amount due under the provisions of such instrument being paid."

Plaintiff does not dispute the defendant's claim that she uttered five checks with her endorsements which were returned to defendant, either because of insufficient funds or because the account was closed. Nor does she contest the fact that written notice of the checks' dishonor was addressed to her and delivered by certified mail to 1300 Princeton Avenue, Bluefield, West Virginia. Plaintiff does contend, however, that at the time the said checks were written and delivered to her, she lived and resided at 2241 Washington Street, Bluefield, West Virginia; that she did not in fact receive any written notice concerning the checks' dishonor; and that, contrary to defendant's claim, she was not properly notified prior to the institution of criminal prosecution against her.

 It is well established in the Virginia courts that where there is no conflict in the evidence, the existence or nonexistence of probable cause is a question for the court, Virginia Ry. & Power Co. v. Klaff, supra, but where there exists any conflict in the evidence as to probable cause, it is for the trier of fact to determine whether in the particular case such probable cause existed. Giant of Virginia, Incorporated v. Pigg, supra; Brodie v. Huck, 187 Va. 485, 47 S. E.2d 310 (1948). Therefore, taking into account the effects of the aforementioned Virginia statutes, and considering that there appears to be a bona fide dispute as to whether plaintiff was properly notified in accordance with Virginia law prior to the instigation of her prosecution, we cannot say as a matter of law that defendant can be "conclusively deemed to have acted with reasonable or probable cause." In order to grant a motion for summary judgment, it must not only appear that there is no genuine issue as to any material fact, but it must also appear from the historic facts that there is no controversy as to the inferences to be drawn therefrom. American Fidelity & Casualty Co. v. The London & Edinburgh Insurance Co., 354 F. 2d 214 (4th Cir. 1965).

We believe that the inferences which can be drawn from the facts and circumstances before us preclude the granting of summary judgment, although it may later be necessary to direct a verdict in the matter. The defendant's motion for summary judgment accordingly must be denied. It is so ordered.